2011 UT App 254

**STATE of Utah, Plaintiff and Appellee,**

v.

**Anthony Joseph DURAN, Defendant and Appellant.**

**No. 20090943–CA.**

Court of Appeals of Utah.

Aug. 4, 2011.

Samuel P. Newton, Ogden, for Appellant.

Mark L. Shurtleff and Marian Decker, Salt Lake City, for Appellee.

Before Judges McHUGH, THORNE, and ROTH.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Anthony Joseph Duran appeals his convictions for burglary, a first degree felony, and theft, a third degree felony. He argues first that the trial court erred in denying his motion for a mistrial both because he was entitled to have the jury determine whether he was a habitual violent offender (HVO) and because a testifying police officer improperly referred to his criminal history. Duran also claims that the trial court committed plain error in not sua sponte declaring a mistrial when a police officer testified about Duran's invocation of his right to remain silent. We affirm.

## BACKGROUND

¶ 2 On the morning of June 28, 2007, the police were investigating two home break-ins in an Ogden neighborhood near Weber State University. Duran was spotted by police officers and attempted to flee, but was later arrested in the parking lot of a nearby business. Although Duran claimed to be in the area looking for "college girls," he was wearing clothing taken from one of the homes that had been burgled. The arresting officers found the homeowner's ATM card and other belongings in the pocket of the pants Duran was wearing. Based on this information, and other circumstantial evidence linking Duran to the other burglarized home, Duran was charged with two counts of burglary, *see* Utah Code Ann. § 76–6–202 (2008),[1] and two counts of theft, *see id.* § 76–6–404. In addition, the State notified Duran that it would be seeking an HVO enhancement under Utah Code section 76–3–203.5

---

1. Because the substantive provisions of the code at issue in this appeal have not changed, we cite to the current version of the code as a convenience to the reader.

(HVO statute) because of Duran's prior convictions. *See id.* § 76–3–203.5 (Supp. 2010).

¶ 3 During opening statements, both the prosecutor and Duran's defense counsel mentioned that Duran had outstanding warrants for his arrest. Specifically, defense counsel used the existence of the warrants to explain why Duran was nervous and fled from the police. Defense counsel's opening statement also intimated that because the officers did not find the ATM card the first time they "searched" Duran, their police work was "sloppy," and he further mentioned that Duran initially agreed to talk to police, but asked for an attorney and invoked his right to remain silent after the officers found the ATM card in the pants he was wearing.

¶ 4 During direct examination, the prosecutor asked one of the officers (first officer) about Duran's reaction when confronted with the ATM card. The first officer responded that Duran "indicated he wanted to talk to a lawyer before we questioned him further." Defense counsel did not object, instead reiterating this testimony during cross-examination by obtaining the first officer's affirmation of the statement: "And [Duran] says at this point I'm not going to talk ... anymore about it. I want an attorney."

¶ 5 In addition, defense counsel's cross-examination of another police officer (second officer) included a request to read a portion of his police report in which he noted Duran's existing warrants to the jury. Defense counsel also cross-examined the second officer about his failure to discover the ATM card immediately upon apprehending Duran, again implying inferior police work.

¶ 6 On redirect examination, the prosecutor asked the second officer to explain the difference between an initial weapons frisk and a subsequent search, presumably to explain why the ATM card was not found until the search. The second officer replied, "I knew the background of Mr. Duran. I've heard a lot of case information about him. Um, and so I thought he possibly could be armed, committing burglaries et cetera. So I did a pat down frisk of him initially." Defense counsel made no objection to this statement.

¶ 7 During the second day of trial, the court and attorneys discussed whether the issue of the HVO enhancement was to be decided by the judge or the jury. The court stated, "[B]efore we look at jury instructions, it's my understanding that if the jury convicts, the question about the habitual criminal and all the enhancements, that is not an issue for the jury to decide." [2] Defense counsel agreed, stating, "No, it is not. . . . [N]ot only the habitual criminal but also the issue of prior convictions on the theft." During this discussion and later conversations regarding the application of the HVO statute, the trial court and the parties agreed that Duran's HVO status and the question of whether he had any prior convictions were issues for the court to decide.

¶ 8 During closing argument, defense counsel suggested that Duran had broken into the second home not to commit theft, but to secure a disguise, because he was nervous that the police officers were looking for him due to his outstanding warrants. Defense counsel then reminded the jurors that Duran agreed to talk to the police until the officers found the ATM card in the pocket of the homeowner's misappropriated pants, at which point Duran asked for an attorney and invoked his right to remain silent. The defense argued that these facts showed that Duran was surprised by the discovery of the ATM card in the pocket of the purloined pants and, therefore, established that Duran had no intention of stealing the card.

¶ 9 After the jury was charged and had begun its deliberations, Duran alerted de-

---

**2.** The trial court apparently relied on our decision in *State v. Palmer,* 2008 UT App 206, 189 P.3d 69, *aff'd on other grounds,* 2009 UT 55, 220 P.3d 1198, which examined the specific language of Utah's DUI statute. Although the reasoning in our decision in *Palmer* was vacated by the supreme court, the issue in that case was whether the jury must decide whether the defendant has prior DUI convictions under Utah's DUI statute.

*See* Utah Code Ann. § 41–6–44(6)(a) (Supp.2004) (currently codified at Utah Code Ann. §§ 41–6a–502 to –503 (Supp.2010)). Unlike the DUI statute in *Palmer,* the HVO statute at issue here expressly states that "the defendant shall be tried regarding the allegation of being an habitual violent offender by the same jury, if practicable, unless the defendant waives the jury." *Id.* § 76–3–203.5(4)(b) (Supp.2010).

fense counsel that the second officer's explanation of why he performed a weapons frisk included references to Duran's criminal background. Although defense counsel brought Duran's concerns to the trial court's attention, defense counsel stated that he was not sure whether to move for a mistrial then or after the jury reached a verdict. The trial court responded that the issue was preserved and even if defense counsel made the motion immediately, the court would simply take it under advisement until after the jury returned a verdict.

¶ 10 The jury found Duran guilty of one count of burglary and one count of theft, both arising out of the break-in of the home whose owner's clothing Duran was wearing at the time of arrest. Because the jury was unable to reach a unanimous verdict on the charges involving the other home, they were dismissed at sentencing. After the jury returned its verdict, the trial court inquired whether either party had "[a]nything else before [it] released the jury." Defense counsel responded, "We have nothing further, your Honor." The trial court then released the jury.

¶ 11 After the jury was dismissed, Duran moved for a mistrial, arguing that the second officer improperly commented on his criminal history. He also claimed, for the first time, that a mistrial should be granted because he was entitled to have the jury decide whether he was an HVO under the HVO statute. After oral argument, the trial court denied the motion, concluding that Duran waived his right to have a jury decide the HVO enhancement, and that the second officer's comment was made in good faith and was not prejudicial in light of the "absolutely overwhelming" evidence supporting Duran's conviction. Duran filed a timely appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 12 On appeal, Duran argues that the trial court erred in denying his motion for a mistrial, again asserting that he was entitled to have the jury determine whether he was an HVO, see Utah Code Ann. § 76–3–203.5 (Supp.2010), and that the second police officer improperly commented on his past criminal history. While "[a] trial court's denial of a motion for a mistrial will not be reversed absent an abuse of discretion," State v. Wach, 2001 UT 35, ¶ 45, 24 P.3d 948, "[a]ny legal determinations made by the trial court as a basis for its denial of a new trial motion are reviewed for correctness," State v. Pritchett, 2003 UT 24, ¶ 15, 69 P.3d 1278 (alteration in original) (internal quotation marks omitted).

■ ¶ 13 Duran also argues that the first officer improperly commented on Duran's invocation of his right to remain silent. Although Duran concedes that he did not preserve this issue, he argues on appeal that the trial court committed plain error in not sua sponte declaring a mistrial. To prevail on a claim of plain error, Duran "must demonstrate that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." State v. Ross, 2007 UT 89, ¶ 17, 174 P.3d 628 (internal quotation marks omitted). For "certain federal constitutional errors" we evaluate prejudice for whether "the error was harmless beyond a reasonable doubt." State v. Verde, 770 P.2d 116, 121 (Utah 1989); see also State v. Maas, 1999 UT App 325, ¶ 14, 991 P.2d 1108 (stating that when the State's witness improperly commented on the defendant's invocation of her right to remain silent and the claim was preserved, the standard of review was "harmless beyond a reasonable doubt"). "If any one of these requirements is not met, plain error is not established." State v. Dunn, 850 P.2d 1201, 1209 (Utah 1993).

## ANALYSIS

### I. Duran's Right to a Jury Trial

¶ 14 Duran argues that because the HVO statute requires the jury, rather than the trial court, to determine whether he was an HVO, the trial court erred when it dismissed the jury and decided Duran's HVO status from the bench. In addition, Duran contends that defense counsel's failure to object to, and even his acquiescence in, the decision to dismiss the jury and submit that issue to the trial court cannot constitute a waiver. Duran argues that both the Utah and United States Constitutions require that the waiver of a right to a jury trial must be knowing and

voluntary. *See Patton v. United States,* 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854 (1930) (requiring knowing and voluntary waiver of the right to jury trial), *abrogated in part on other grounds by Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *accord State v. Hassan,* 2004 UT 99, ¶ 12, 108 P.3d 695.

¶ 15 In response, the State contends that Duran "repeatedly and expressly agreed with the trial court that the penalty enhancement issue was for the trial court not the jury, to decide." Thus, the State asserts that any error in the trial court's denial of Duran's motion for mistrial was invited by defense counsel's agreement that the penalty enhancement phase of the proceedings could be tried to the court and that the jury could be dismissed. In the alternative, the State argues that Duran has raised no factual questions that could entitle him to trial by jury, even if his counsel had not forfeited that right.

■■■■ ¶ 16 Under the Sixth Amendment to the United States Constitution,[3] a criminal defendant has "the right to have a jury determine, beyond a reasonable doubt," whether the defendant is guilty "of every *element* of the crime with which he is charged." *United States v. Gaudin,* 515 U.S. 506, 522–23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (emphasis added). In addition, " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely v. Washington,* 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)); *see also Almendarez–Torres v. United States,* 523 U.S. 224, 240–43, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)

(rejecting defendant's argument that where his recidivism increased the maximum sentence available, it must be treated as an element of his offense); *State v. Palmer,* 2009 UT 55, ¶ 12, 220 P.3d 1198 (recognizing that there is no federal constitutional right to a jury trial on the issue of recidivism).[4]

¶ 17 Duran argues that his jury trial right under the HVO statute implicates both of the situations in which the United States Supreme Court has determined that a Sixth Amendment jury trial is guaranteed. He argues that because the Utah legislature provided for a jury determination beyond a reasonable doubt, it "contemplated [the HVO issue] as an element of the offense and not as a simple sentence enhancement." Alternatively, he asserts that although a jury determination of the fact of a prior conviction is not constitutionally provided for during sentencing, *see Palmer,* 2009 UT 55, ¶ 12, 220 P.3d 1198, the application of the HVO statute "clearly requires some factual determination beyond the existence of prior convictions" and, therefore, he is constitutionally entitled to a jury determination of these facts. Relying on this authority, Duran claims that the federal constitution requires that the jury determine his HVO status, a finding that he contends requires more than simply concluding that he has prior convictions.

¶ 18 In addition, Duran contends that the HVO statute provided a right to a jury trial on this issue that is not dependent on the existence of a similar constitutional right. *See* Utah Code Ann. § 76–3–203.5(4)(a) (Supp.2010) ("If the jury's verdict is guilty, the defendant shall be tried regarding the allegation of being an [HVO] by the same jury, if practicable, unless the defendant waives the jury, in which case the allegation shall be tried immediately to the court.").[5]

---

3. "[T]he Sixth amendment applies to the states through the Fourteenth Amendment Due Process Clause...." *State v. Carreno,* 2006 UT 59, ¶ 8, 144 P.3d 1152; *see also* U.S. Const. amends. VI, XIV.

4. Although our supreme court in *State v. Palmer,* 2009 UT 55, 220 P.3d 1198, suggested that there may be a right under the Utah Constitution "to have a jury determine the factual question of whether there was a prior conviction," *see id.*

¶ 12 n. 19, we need not address this issue because Duran has not sufficiently raised a claim under the Utah Constitution. *See supra* note 6.

5. Subsection (3)(b)(i) provides that "[t]he defendant shall serve notice in writing upon the prosecutor if the defendant intends to deny that: (A) the defendant is the person who was convicted or committed [previously]; (B) the defendant was represented by counsel or had waived counsel; or (C) the defendant's plea was not understand-

According to Duran, the violation of this statutory right also violated his Sixth Amendment right to trial by jury.

¶ 19 For purposes of our analysis, we presume, without deciding, that Duran is correct that he had both a federal constitutional and state statutory right to have the jury decide his HVO status. We also presume, for purposes of our analysis only, that Duran's right to a jury determination of that issue could only be forfeited by a knowing and voluntary waiver. We further presume that such a waiver is not present here. Thus, we begin our review of the trial court's decision denying Duran's motion for mistrial by presuming that the court erred in deciding the HVO question from the bench, rather than submitting it to the jury. Nevertheless, we affirm the trial court's denial of the motion for new trial on this basis because any presumed error was harmless beyond a reasonable doubt.

A. Under the Federal Constitution, Duran Is Not Entitled to a Mistrial if any Presumed Error Was Harmless Beyond a Reasonable Doubt.

¶ 20 Even presuming that the trial court's determination of his HVO status violated Duran's Sixth Amendment rights under the federal constitution,[6] he is not entitled to a mistrial if that error was harmless beyond a reasonable doubt. In *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the defendant was charged with various crimes, including tax fraud. *See id.* at 6, 119 S.Ct. 1827. Despite the defendant's objections, the trial court instructed the jury that to convict on the various counts of fraud, it need not consider the materiality of any false statements because that question would be decided by the court. *See id.* The trial court found that the misrepresentations at issue were material, and the jury convicted the defendant. *See id.* On appeal, the federal circuit affirmed the defendant's conviction, concluding that any error in not submitting the question of materiality to the jury was harmless. *See id.* at 7, 119 S.Ct. 1827.

¶ 21 The United States Supreme Court granted certiorari on two issues, one of which was "whether, and under what circumstances, the omission of an element from the judge's charge to the jury can be harmless error."[7] *Id.* The Supreme Court began its analysis of that issue by explaining that, although rule 52(a) of the Federal Rules of Criminal Procedure provides that errors that do not affect substantial rights should be disregarded,[8] there is "a limited class of fundamental constitutional errors that 'defy analysis by "harmless error" standards.'" *Id.* (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Although other constitutional errors may be disregarded if they are harmless beyond a reasonable doubt, these fundamental errors are structural, meaning that they are so "intrinsically harmful as to require automatic reversal." *Id.* at 7, 119 S.Ct. 1827.

¶ 22 Nevertheless, the Supreme Court stressed that the instances in which it has found that an error is structural have been

---

ingly or voluntarily entered." Utah Code Ann. § 76-3-203.5(3)(b)(i).

6. While Duran's brief notes that the Utah Constitution also includes a right to a jury trial, he "'does not argue that the Utah Constitution affords him greater protection than the United States Constitution, nor does he provide any analysis of how the two constitutional provisions differ.'" *State v. Munguia,* 2011 UT 5, ¶ 15 n. 10, 253 P.3d 1082 (quoting *State v. Harker,* 2010 UT 56, ¶ 10 n. 8, 240 P.3d 780). Therefore, "'we address the issue only under the United States Constitution.'" *Id.* (quoting *Harker,* 2010 UT 56, ¶ 10 n. 8, 240 P.3d 780). By doing so, we express no opinion about whether the Utah Constitution provides greater protection than the United States Constitution, such that it would

require automatic reversal if a defendant's right to a jury trial on a specific element or sentencing factor is violated.

7. The Supreme Court also considered "whether materiality is an element of the federal mail fraud, wire fraud, and bank fraud statutes," ultimately concluding unanimously that it is. *See Neder v. United States,* 527 U.S. 1, 7, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

8. Rule 52(a) states, "Any error, defect, irregularity or variance which does not affect substantial rights must be disregarded." Fed.R.Crim.P. 52(a); *accord* Utah R.Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded.").

"very limited." *See id.* at 8, 119 S.Ct. 1827 (internal quotation marks omitted) (listing cases holding that error is structural). Only where the errors "infect the entire trial process," thereby "depriv[ing] defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," is harm presumed. *See id.* at 8–9, 119 S.Ct. 1827 (citations and internal quotation marks omitted). The Supreme Court concluded that a trial court's failure to charge the jury on a single element of the crime charged did not meet this threshold because it does not render the trial "fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9, 119 S.Ct. 1827.

¶ 23 The Supreme Court reasoned that the failure to submit an element to the jury is analogous to giving the jury an improper instruction on a single element of the offense. *See id.* at 9–11, 119 S.Ct. 1827. Because in the case of an improper jury instruction the error is reviewed for harm, the *Neder* Court concluded that harmless error review is also appropriate where a single element of the crime is erroneously decided by the judge, instead of the jury. *See id.* at 15, 119 S.Ct. 1827. Thus, the *Neder* Court affirmed the defendant's conviction of tax fraud based on its conclusion that, where the defendant "did not, and apparently could not, bring forth facts contesting" materiality, the trial court's error in deciding the element of materiality instead of submitting it to the jury was

harmless beyond a reasonable doubt.[9] *See id.* at 16, 19–21, 119 S.Ct. 1827.

¶ 24 More recently, the United States Supreme Court considered the same issue in the context of a sentencing factor other than the defendant's prior convictions. In *Washington v. Recuenco*, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), the jury found the defendant guilty of assault with a deadly weapon but made no separate finding indicating that the dangerous weapon involved was a firearm. *See id.* at 214–15, 126 S.Ct. 2546. At sentencing, the trial court applied a three-year firearm enhancement based on its own factual finding that the defendant used a gun during the assault. *See id.* The defendant appealed, relying on the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Blakely*, the Supreme Court held that any fact that increases the penalty for the crime beyond the maximum sentence provided by statute—other than the fact that the defendant has previously been convicted of other crimes—must be found by the jury beyond a reasonable doubt. *See id.* at 301, 124 S.Ct. 2531. Thus, the Washington Supreme Court in *Recuenco* agreed with the defendant that the trial court erred by not submitting the firearm sentencing factor to the jury and vacated the defendant's conviction on the ground that *Blakely* violations can never be harmless. *See Recuenco*, 548 U.S. at 215, 126 S.Ct. 2546.

¶ 25 On certiorari review, the United States Supreme Court reversed the Washington Supreme Court.[10] The *Recuenco*

---

**9.** *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), was not a unanimous decision on the issue of whether the failure to submit the issue of materiality to the jury could be reviewed under the harmless-error rule. Justice Rehnquist, writing for the majority, was joined by Justices O'Connor, Kennedy, Thomas, and Breyer. *See id.* at 4–25, 119 S.Ct. 1827. Justice Stevens concurred in the result reached by the majority but reasoned that the jury implicitly found materiality. *See id.* at 25–30, 119 S.Ct. 1827 (Stevens, J., concurring). The remaining justices, Souter and Ginsburg, joined in a decision written by Justice Scalia that dissented from the majority's harmless error analysis, opining instead that the deprivation of the defendant's right to have the jury determine each element of the crime could never be harmless error if properly preserved. *See id.* at 30–40, 119 S.Ct. 1827 (Scalia, J., concurring in part and dissenting in

part); *see also id.* at 34, 119 S.Ct. 1827 ("In the context of such unobjected-to error [withholding the question of materiality from the jury], the mere deprivation of substantial rights does not without more, warrant reversal, but the appellant must also show that the deprivation seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." (second alteration in original) (citation and internal quotation marks omitted)).

**10.** Justice Thomas delivered the opinion of the Court, joined by Justices Roberts, Scalia, Kennedy, Souter, Breyer, and Alito. *See Washington v. Recuenco*, 548 U.S. 212, 214–22, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). Justice Kennedy concurred, writing separately simply to note that the Court's prior decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296,

Court explained, " '[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.' " *Id.* at 218, 126 S.Ct. 2546 (alterations in original) (quoting *Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Concluding that the failure to submit the firearm sentencing factor to the jury was indistinguishable from the trial judge's determination of the materiality element in *Neder,* the *Recuenco* Court held that "[f]ailure to submit a sentencing factor to the jury, like a failure to submit an element to the jury, is not structural error." *Id.* at 222, 126 S.Ct. 2546.

 ¶ 26 While the *Neder* Court held that the harmless-error rule applies to violations of the Sixth Amendment to the United States Constitution, the defendant in *Recuenco* argued that state law prohibited its appellate courts from reviewing the failure to submit a nonrecidivism sentencing factor to the jury under the harmless-error rule. *See id.* at 218, 126 S.Ct. 2546. Consequently, the Supreme Court acknowledged that this issue remained "open to [the defendant] on remand." *Id.* at 218 n. 1, 126 S.Ct. 2546. Here, Duran's appeal is based upon the trial court's violation of his federal constitutional right to a jury trial, and he has not argued that Utah law provides him with more protection than

federal law in the event of such a violation. Thus, we express no opinion on that issue and instead follow United States Supreme Court authority holding that the failure to submit an element or sentencing factor to the jury should be reviewed under the harmless-error rule.[11] We now consider whether the trial court's determination of Duran's HVO status, even if presumed to be in error, was harmless beyond a reasonable doubt.

B. Any Presumed Error in Not Submitting the HVO Issue to the Jury Was Harmless Beyond a Reasonable Doubt.

¶ 27 To assess the harmfulness of any presumed error in not submitting the HVO question to the jury, we must identify what facts the jury could have decided to Duran's benefit. According to Duran, the HVO statute gives criminal defendants a broad right to have a jury determine beyond a reasonable doubt whether "the person is an [HVO] under [the HVO statute]" and "whether [the HVO statute] is applicable." Under the statute, Duran must have been convicted of a "violent felony" at least twice to be sentenced as an HVO. *See* Utah Code Ann. § 76–3–203.5(1)(b) (Supp.2010). This requires a determination of whether the prior convictions are "violent felonies" as defined in the statute. *See id.* § 76–3–203.5(1)(c)(i)–(ii). However, in most instances, this involves a legal determination only.[12] *See United States v.*

124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), were accompanied with dissents, but that the majority had accurately stated their holdings. *See Recuenco,* 548 U.S. at 222, 126 S.Ct. 2546 (Kennedy, J., concurring). Only Justices Stevens and Ginsburg dissented. *See id.* at 224–29, 126 S.Ct. 2546 (Ginsburg, J., dissenting).

11. Utah may view a defendant's right to jury trial under the Utah Constitution differently than the right provided by the United States Constitution. *See State v. Palmer,* 2009 UT 55, ¶ 12 n. 19, 220 P.3d 1198 ("We do not determine at this time whether the Utah Constitution guarantees a right to have a jury determine the factual question of whether there was a prior conviction. Our decision in *State v. Harris,* [1 Utah 2d 182, 264 P.2d 284 (1953)] seems to indicate that it may....").

12. We recognize that there may be a constitutionally-protected right to a jury determination of tangential factual issues related to determining whether a prior offense qualifies as a "violent

felony" under the HVO statute. This may be an issue, for example, if the elements of the prior offense are broader than those of the named qualifying offenses. *See, e.g., Shepard v. United States,* 544 U.S. 13, 25–26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (concluding that to avoid Sixth Amendment concerns, a sentencing judge is "limited to the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information" in determining whether a prior guilty plea is sufficient to establish a qualifying offense under a federal recidivism statute); *id.* at 19–21, 125 S.Ct. 1254 (citing *Taylor v. United States,* 495 U.S. 575, 601–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), for the proposition that a court may look to the charging documents and jury instructions of previous conviction in order to determine if the jury necessarily found all the elements sufficient to establish a qualifying offense under a federal recidivism statute). *But see People v. Kelii,* 21

*Credit,* 95 F.3d 362, 364 (5th Cir.1996) (concluding that for purposes of a federal recidivism statute "the definition of a crime of violence is a matter of statutory interpretation that is a purely legal judgment for the court" (internal quotation marks omitted)), *cert. denied,* 519 U.S. 1138, 117 S.Ct. 1008, 136 L.Ed.2d 886 (1997); *United States v. Weston,* 960 F.2d 212, 217 (1st Cir.1992) (concluding that the trial court "fulfill[ed] its proper function as the arbiter of the law, [in] directing the jury as to the applicability of the term 'crime of violence' in accordance with the definitions contained in the relevant statute"), *abrogated on other grounds by Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); *see also State v. Palmer,* 2009 UT 55, ¶ 14, 220 P.3d 1198 ("[T]he legislature is not empowered to expand the role of the jury beyond fact-finders.... It is the role of the jury to find facts and apply them to the judge's instructions on the law."); *State v. Pixton,* 2004 UT App 275, ¶ 4, 98 P.3d 433 ("The correct interpretation of a statute is a question of law and is reviewed for correctness." (internal quotation marks omitted)). Therefore, any legal determinations regarding Duran's HVO status were properly made by the trial court.

¶ 28 In the trial court, Duran raised only three objections to the State's evidence of his prior convictions, each of which involve purely legal questions. Duran first argued that the State did not comply with the notice requirement under the HVO statute because the case numbers of the prior convictions were not listed on the information. *See* Utah Code Ann. § 76–3–203.5(3)(a) (providing that the prosecutor shall provide notice if seeking punishment under the HVO statute and that such "[n]otice shall include the case number, court, and date of conviction or commitment of any case relied upon by the prosecution"). Duran's second objection was that the statute requires the HVO issue to be heard by the trial court "immediately" after trial if there is a jury waiver and it had "been several months" between the two phases of trial.

*See id.* § 76–3–203.5(4)(b) (providing that if "the defendant waives the jury, ... the [HVO] allegation shall be tried immediately to the court"). Duran's final argument contested the State's position that Duran's failure to give notice of his intent to challenge the prior convictions, as required by the HVO statute, waived his statutory right to a jury trial. *See id.* § 76–3–203.5(3)(b)(i) ("The defendant shall serve notice in writing upon the prosecutor if the defendant intends to deny that: (A) the defendant is the person who was convicted or committed; (B) the defendant was represented by counsel or had waived counsel; or (C) the defendant's plea was understandingly or voluntarily entered.").

¶ 29 While Duran has not reasserted these arguments on appeal, they each involve questions of law that were properly decided by the trial court: Duran's challenge to the State's failure to give notice under the HVO statute, *see generally State v. Webster,* 2001 UT App 238, ¶ 10, 32 P.3d 976 (noting that the interpretation of the notice requirement in a rule of evidence "constitutes a conclusion of law"); the definition of the term "immediately" as used in the HVO statute, *see Palmer,* 2009 UT 55, ¶ 17, 220 P.3d 1198 (concluding that defendant raised only a legal challenge when he questioned the "legal definition of 'conviction'" for purposes of Utah's DUI statute); and Duran's argument that his failure to give notice to the State if he wanted to use certain bases to challenge the prior convictions did not waive his right to a jury trial under the statute, *see Pixton,* 2004 UT App 275, ¶ 4, 98 P.3d 433 ("The correct interpretation of a statute is a question of law and is reviewed for correctness." (internal quotation marks omitted)).

¶ 30 Although Duran admits he made only these legal challenges in the trial court, he now asserts that he "would have presented the enhancement in more of a factual light" if it had been tried to a jury rather than the trial court. However, Duran has suggested

Cal.4th 452, 87 Cal.Rptr.2d 674, 981 P.2d 518, 520 (1999) (concluding that the trial court determines whether a previous conviction qualifies as a "strike" for purposes of California's Three Strikes law and that it "may look to the entire record of the [prior] conviction, but no further" (emphasis and internal quotation marks omitted)). However, because Duran has not challenged his enhancement on these grounds, we leave resolution of this issue to another day.

no factual basis on which he would challenge the evidence presented by the State, and did not make such a factual challenge in the trial court. *See Neder v. United States,* 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (concluding that the failure to submit an element of materiality to the jury was harmless beyond a reasonable doubt where the defendant did not contest materiality at trial); *see also* Utah Code Ann. § 76–3–203.5(4)(c)(ii) ("The trier of fact shall consider any evidence presented at trial and the prosecution and the defendant shall be afforded an opportunity to present any necessary additional evidence."). Furthermore, under subsection (3)(b)(i), Duran was required to give notice to the State if he intended to dispute whether he was the person previously convicted, whether he was represented by or waived counsel during the prior criminal proceedings, or whether any prior plea was understandingly or voluntarily entered. *See* Utah Code Ann. § 76–3–203.5(3)(b)(i). Duran conceded during oral arguments on his motion for a mistrial that his failure to give notice under subsection (3)(b)(i) of the HVO statute prevents him from arguing these factual questions. *See id.* Duran has failed to identify any other factual issue he challenges with respect to his HVO status.

¶ 31 During the hearing on the applicability of the HVO statute, the State submitted a certified document entitled "Certificate of Records of Authenticity" from the Utah State prison, which apparently included Duran's photograph, his fingerprints, and records relating to his various convictions.[13] Duran did not object to the admission of these certified documents. Instead, after the trial court's denial of Duran's motion for a mistrial, defense counsel observed that "another good reason not to have a jury" on the issue of Duran's HVO status is that "the jury would have been instructed primarily on judicial notice from your Honor."

¶ 32 Even on appeal, Duran fails to identify any factual challenge to his status as

an HVO, instead making vague assertions that he would have done so if the issue had been tried to the jury. Under these circumstances, we are convinced that any presumed error in the trial court's determination of Duran's HVO status was harmless beyond a reasonable doubt. Therefore, we affirm the trial court's denial of Duran's motion for mistrial on this basis.

II. The Trial Court Did Not Exceed Its Discretion in Denying Duran's Motion for a Mistrial Because of the Officer's Comment on Duran's Criminal History.

¶ 33 Duran also asserts that the trial court exceeded its discretion by denying his motion for a mistrial based on the second officer's comment that he had "heard a lot of case information about" Duran and "thought he possibly could be armed, committing burglaries et cetera." According to Duran, this improper introduction of evidence of his criminal history mandated a new trial. A trial court, in the exercise of its discretion, "should not grant a mistrial except where the circumstances are such as to reasonably indicate ... that a fair trial cannot be had and that a mistrial is necessary in order to avoid injustice." *State v. Wach,* 2001 UT 35, ¶ 45, 24 P.3d 948 (internal quotation marks omitted). On appellate review, however, "[u]nless the trial court's determination is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial, we will not find that the court's decision was an abuse of discretion." *Id.* (internal quotation marks omitted). Although we agree that the introduction of such evidence can be grounds for a new trial in some instances, we are not convinced that the trial court exceeded its discretion in denying Duran's motion for a new trial under the facts present here. *See State v. Butterfield,* 2001 UT 59, ¶¶ 45–47, 27 P.3d 1133 (affirming denial of mistrial where the prosecutor elicited testimony from the detective that he obtained a picture of the defendant from the jail); *State v. Wright,* 893 P.2d 1113, 1119 (Utah Ct.App.1995) (affirming the

---

**13.** These documents are not included in the record on appeal. "Where the record before us is incomplete, we are unable to review the evidence as a whole and must therefore presume that the

verdict was supported by admissible and competent evidence." *Sampson v. Richins,* 770 P.2d 998, 1002 (Utah Ct.App.1989) (internal quotation marks omitted).

trial court's denial of the defendant's motion for a mistrial based on the prosecutor's comments, including that the defendant .was on parole, because "when viewed in light of the totality of the evidence, the comments were not prejudicial such that there [was] a reasonable likelihood that, in [their] absence, there would have been a more favorable result" (alterations in original) (internal quotation marks omitted)).

¶34 In *State v. Allen*, 2005 UT 11, 108 P.3d 730, the Utah Supreme Court explained that "a mistrial is not required where an improper statement is not intentionally elicited, is made in passing, and is relatively innocuous in light of all the testimony presented." *Id.* ¶40; *see also Wach*, 2001 UT 35, ¶46, 24 P.3d 948 (concluding that the trial court did not exceed its discretion in denying a motion for a mistrial based on the victim's comment that she wore a security alarm when the defendant was around because (1) it was not elicited by the prosecutor, (2) it "was an isolated, off-hand remark," and (3) the victim's testimony describing the attack was compelling and uncontradicted).

¶35 Here, the statement was not intentionally elicited. During opening statement and again during cross-examination of the second officer, defense counsel raised questions about the failure of the police officers to find the ATM card during their first "search" of Duran. In an attempt to dispel any inference that the police investigation was deficient, on redirect examination the prosecutor asked the second officer to explain the difference between a weapons frisk and a search. In the course of explaining the limited purpose of an initial pat-down of the suspect intended only to find weapons, the second officer also explained his reason for conducting a weapons frisk in the first instance. That portion of the second officer's testimony, which was not responsive to the precise question asked by the prosecutor, included the reference to Duran's prior criminal history. Our review of the transcript convinces us that the prosecutor never asked the second officer to comment on Duran's criminal history. Instead, the prosecutor asked for an explanation of why an initial weapons frisk would not be expected to reveal the ATM card. The second officer's gratuitous explanation that he had heard "a lot of case information" about Duran and, therefore, thought Duran could be "armed, committing burglaries et cetera," was not intentionally elicited by the prosecutor.

¶36 In addition, the statement was "made in passing and [was] relatively innocuous in light of all the testimony presented." *See Allen*, 2005 UT 11, ¶40, 108 P.3d 730. Indeed, the statement was so innocuous that defense counsel did not object when it was made, only realizing that the second officer had raised issues relating to Duran's criminal history after the jury was sequestered for deliberations. Furthermore, the prosecutor did not follow up on the volunteered information with questions about what the second officer had heard or do anything else to call further attention to that issue.

¶37 Furthermore, it is unlikely that the comment influenced the jury where—in an effort to explain Duran's motives for fleeing from police and for entering the home— defense counsel referred to Duran's outstanding warrants. Indeed, defense counsel broached the subject several times throughout the proceedings: In his opening statement, defense counsel indicated that Duran had outstanding warrants; during cross-examination of the first officer, the defense asked the officer to read the section of his report referring to Duran's outstanding warrants; and in closing argument, the defense argued that Duran's concern about those outstanding warrants caused him to flee from the police and disguise himself in the homeowner's clothing. Thus, the defense introduced Duran's prior criminal history for its own purposes.

¶38 Moreover, the evidence against Duran on the count of which he was convicted was strong. He was apprehended in the vicinity of the burglarized home while wearing the homeowner's clothing and carrying the homeowner's ATM card and other items belonging to the homeowner in the pocket of the pilfered pants. It is apparent that the jury carefully considered this evidence, rather than making assumptions based on Duran's criminal history because it convicted him of the charges involving the home where

he acquired the clothing but could not come to a unanimous decision on the charges involving the other home burglary.

¶ 39 Under these circumstances, we are not convinced that the officer's comment "so influenced the jury that [Duran] cannot be said to have had a fair trial." *See State v. Allen*, 2005 UT 11, ¶ 39, 108 P.3d 730 (internal quotation marks omitted). Therefore, we conclude that the trial court did not exceed its discretion in denying Duran's motion for a mistrial on this basis.

III. There Was No Error Based on the Officer's Comment About Duran's Invocation of His Right to Remain Silent Where Duran Used the Same Information as Part of His Trial Strategy.

¶ 40 Duran argues that the first officer's comment on his invocation of the right to remain silent was a violation of his constitutional right against self-incrimination. "The Due Process Clause of the Fourteenth Amendment prohibits use of a defendant's post–*Miranda* silence for impeachment purposes." *State v. Baker*, 963 P.2d 801, 806 (Utah Ct.App.1998); *see also* U.S. Const. amend. XIV. Because Duran concedes that he did not preserve the issue, we review his claim for plain error. *See State v. Smit*, 2004 UT App 222, ¶ 26, 95 P.3d 1203.

¶ 41 Duran cannot claim error based on the officer's comment about Duran's invocation of his right to remain silent where Duran introduced this same information as part of his defense strategy.[14] At trial, defense counsel used the fact that Duran willingly spoke with the police following his arrest and only invoked his right to remain silent after the discovery of the ATM card to support the defense theory that Duran broke into the house to find a disguise rather than to commit a theft. According to the defense, Duran's lack of intent to steal the ATM card is evidenced by the fact that he was willing to talk to the police until they discovered, much to his surprise, that the ATM card was in the pocket of the homeowner's pants.

¶ 42 Defense counsel advanced this defense by referring to Duran's invocation of his right to remain silent during opening statements and closing arguments, and by using cross-examination to have the first officer repeat the same statement of which he now complains. By using this information throughout the trial in an attempt to explain his behavior, Duran has "forfeited his right to prevent the prosecut[ion witness] from commenting on his request for counsel because he adduced and relied on the evidence as part of his . . . defense." *State v. Dunn*, 850 P.2d 1201, 1223 (Utah 1993); *see also State v. Bakalov*, 1999 UT 45, ¶ 66, 979 P.2d 799 (concluding that the "defendant cannot complain about the prosecutor's examination of [another witness] on essentially the same information" when the defendant used testimony about the invocation of his right to remain silent as "an explanation . . . for fleeing the police").

## CONCLUSION

¶ 43 The trial court did not exceed its discretion in denying Duran's motion for a new trial. Even presuming that Duran had a statutory and constitutional right to have a jury determine his HVO status that was not waived, any error in the trial court's determination of that issue was harmless beyond a reasonable doubt. In addition, the second officer's comment about Duran's criminal history was not intentionally elicited by the prosecution, was made in passing, and was relatively innocuous in light of the strong evidence supporting Duran's conviction and the defense's own use of Duran's criminal history. Consequently, the second officer's comment did not so influence the jury that Duran cannot be said to have had a fair trial. In addition, the trial court did not commit plain error in failing to declare a mistrial based on the first officer's comment about Duran's invocation of his right to remain silent. The error was not plain or prejudicial because Duran brought the same information to the jury's attention as part of his defense strategy.

¶ 44 Affirmed.

¶ 45 I CONCUR: STEPHEN L. ROTH, Judge.

14. Duran has not argued that his trial counsel was ineffective in pursuing this strategy.

THORNE, Judge (concurring):

¶ 46 I concur with the analysis of parts II and III of the majority opinion. However, I write separately with regard to the analysis of part I because I believe that Duran invited the presumed error in the trial court's determination of Duran's HVO status and that application of the harmless-error rule is therefore precluded.

¶ 47 The invited error doctrine "prohibits parties from taking advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Maese*, 2010 UT App 106, ¶ 9, 236 P.3d 155 (internal quotation marks omitted), *cert. denied*, 247 P.3d 774 (Utah 2011). "Further, parties are 'not entitled to both the benefit of not objecting at trial and the benefit of objecting on appeal.' " *Pratt v. Nelson*, 2007 UT 41, ¶ 17, 164 P.3d 366 (quoting *State v. King*, 2006 UT 3, ¶ 13, 131 P.3d 202). " '[E]ncouraging counsel to actively participate in all proceedings and to raise any possible error at the time of its occurrence fortifies our long-established policy that the trial court should have the first opportunity to address a claim of error.' " *Id.* (quoting *State v. Winfield*, 2006 UT 4, ¶ 15, 128 P.3d 1171).

¶ 48 In this case, the trial court discussed the particulars of the HVO penalty enhancement with trial counsel on the second day of trial. The court enunciated its understanding that the question about the HVO penalty enhancement was not an issue for the jury to decide and asked both counsel if that was their understanding as well. Both trial counsel confirmed agreement with the trial court's understanding that the enhancement decision was not a jury issue, and the court then confirmed that this issue would not be submitted to the jury. The pertinent portion of the trial court's discussion with counsel about the HVO penalty enhancement is as follows:

> [Trial court]:.... Now, let me, before we look at jury instructions, it's my understanding that if the jury convicts, the question about the habitual criminal and all the enhancements, that is not an issue for the jury to decide.
>
> [Defense counsel]: *No, it is not.*

> [Trial court]: Is that your understanding too?
>
> [Defense counsel]: *Nor is, well, not only the habitual criminal but also the issue of prior convictions on the theft.*
>
> [Trial court]: Right. *Any enhancements or habitual criminal would simply be a matter for the Court rather than the jury? I know at one time it was different than that, but I think there's a case out of Provo that decided that's no longer an issue for the jury. But I just—I wanted to make sure that both sides are in agreement. The only thing they are going to decide is guilt or innocence on two Counts of Burglary, two Counts of Theft. Is that—*
>
> [Defense counsel]: *That's my understanding . . . .*
>
> [Prosecutor]: Um—
>
> [Trial court]: Mr. Daines?
>
> [Prosecutor]: I had heard that there's a case, I didn't know where it was from that has changed the standard bifurcating procedure. The bifurcating procedure would primarily then only be you're taking judicial notice of this district's own convictions.
>
> [Trial court]: Okay. All right. So both sides agree that that's not going to be an issue for the jury, the enhancements or the habitual criminal, right? All right....

(Emphases added.) The above discussion demonstrates that defense counsel made affirmative representations to the trial court that the proper HVO penalty enhancement procedure was that the court should not present the enhancement issue to the jury. Such affirmative representations clearly fall within the scope of the invited error doctrine. *See Pratt*, 2007 UT 41, ¶ 23, 164 P.3d 366 ("[I]nvited error generally occurs in [an] affirmative manner, such as where counsel stipulates to the court's instruction, *states directly that there is no objection to a specific ruling of the court*, or provides the court with erroneous authority upon which the court relies." (emphasis added)).

¶ 49 In addition to this affirmative representation, defense counsel reiterated his agreement with the HVO penalty enhancement procedure as previously set out by the court when defense counsel acquiesced to

the trial court's release of the jury. After the jury rendered the verdict, the trial court asked both counsel, "Anything else before I release the jury?" Defense counsel responded, "We have nothing further, your Honor." Thereafter, the trial court asked the prosecutor how he wanted to handle the HVO enhancement matter. The prosecutor then expressed some concern over proceeding without a jury, stating, "Your Honor has indicated you are certain that this is your Honor's decision and not the jury's decision? That's the only thing that worr[ies] me." Whereby, the trial court again discussed and expressed its understanding of the HVO enhancement procedure with the prosecutor. During this discussion defense counsel remained silent and raised no objection or concerns about proceeding on the enhancement issue without the jury. The trial court, after its discussion with the prosecutor, ultimately decided not to submit the enhancement issue to the jury and proceeded to schedule a date for sentencing.

¶ 50 Such discussions concerning the HVO penalty enhancement procedure demonstrate the degree to which the trial court urged the parties to actively participate in the consideration of the enhancement issue by frequently requesting counsel input on the issue. The record further indicates that prior to releasing the jury and proceeding to the sentencing phase, the trial court encouraged the parties to read *State v. Palmer*, 2008 UT App 206, 189 P.3d 69, which the trial court relied upon in its determination on the HVO penalty enhancement procedure. Despite the trial court's various attempts to elicit and address any objections on the enhancement procedure before the sentencing phase, defense counsel, in contrast to his prior approval of the procedure enunciated, filed a mistrial motion shortly before the scheduled sentencing hearing was to be held raising an objection to the enhancement procedure.

¶ 51 In the post-trial motion for mistrial, defense counsel alleged for the first time that Duran was entitled to have the *same* jury decide the HVO penalty enhancement based on the *Palmer* decision. The trial court then held arguments on defense counsel's motion for mistrial. During oral argument, the trial court gave a detailed description of the attempts it had made to address any objections on the enhancement procedure in a timely fashion and prior to releasing the jury and proceeding with Duran's sentencing hearing. The trial court stated,

My recollection of what happened here is that before the trial started we met in chambers. I met with both counsel in chambers, to discuss the question of how to go about handling the habitual criminal. And we were all in agreement that we were going to bifurcate the trial. The jury would not know anything at all about his prior record.

And then when we were in chambers I mentioned something about this State versus Palmer case, the one that had been decided [by] the Court of Appeals, and the holding. I said, it seems to me that what they are saying is that the jury is not necessarily required to hear evidence when we're talking about enhancing penalties. And I asked both attorneys what your position was on this. And both said, I'm not sure. I haven't had a chance to read the case.

. . . .

I suggested that both sides take a look at the case, and let me know how you wanted to proceed. My impression is, that after we finished the trial, after we got the verdict from the jury, neither side raised an objection or requested that I keep the jury.

After arguments on the matter, the court denied this motion ruling that Duran had waived any right to a jury trial on the HVO penalty enhancement. Thereafter, contrary to his argument in the mistrial motion that Duran was entitled to have the same jury decide the issue, defense counsel then appears to provide his active support for the court's decision to present the issue to neither the same jury nor a newly impaneled jury. Defense counsel stated, "[W]hich—brings up the point that whether a jury was impaneled—I think the jury would have been instructed primarily on judicial notice from your Honor[,] ... [w]hich is another good reason not to have a jury." Defense counsel's representation about the benefits of pro-

ceeding without a jury in this instance compounds the invited error by assuring the trial court and validating the decision to conduct the HVO penalty enhancement hearing without the presence of a jury. This affirmative support for the trial court's presumed erroneous decision is another example of how invited error, in this case compounded, provided the basis for the court's action. " 'Affirmative representations that a party has no objection to the proceedings fall within the scope of the invited error doctrine because such representations reassure the trial court and encourage it to proceed without further consideration of the issues.' " *Pratt*, 2007 UT 41, ¶ 18, 164 P.3d 366 (quoting *Winfield*, 2006 UT 4, ¶ 16, 128 P.3d 1171).

¶ 52 Defense counsel's affirmative representations, both before and after the dismissal of the jury, in agreement with the court's interpretation of the *Palmer* decision and oral ruling not to present the enhancement issue to the jury constitutes invited error. "[I]nvited error is procedurally unjustified and viewed with disfavor, especially where ample opportunity has been afforded to avoid such a result." *State v. Tillman*, 750 P.2d 546, 560–61 (Utah 1987). The invited error doctrine "arises from the principle that a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *Pratt v. Nelson*, 2007 UT 41, ¶ 17, 164 P.3d 366. The review of this issue under the harmless-error rule effectively undermines the long-established principles of the invited error doctrine that discourages "parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal," *id.*, and the policy that the trial court should have the first opportunity to address a claim of error, *see id.* Moreover, the application of the invited error doctrine, "conserves judicial resources and promotes speedy justice for all concerned." *Cf. Boyle v. Christensen*, 2011 UT 20, ¶ 14, 251 P.3d 810 (Utah 2011) (stating that the preservation rule conserves judicial resources and promotes speedy justice).

¶ 53 Application of a harmless-error analysis, in this case sets the unfortunate precedent that attorneys may actively participate in invited error, yet benefit from any error which does not meet the test for harmless error. I believe such a result would be most regrettable. As a result, I would affirm the trial court on the basis of invited error and would not review the claim under the harmless-error rule.