2020 UT App 56

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JAMES ROBERT DUNNE,
Appellant.

Opinion
No. 20180646-CA
Filed April 9, 2020

Second District Court, Farmington Department
The Honorable Thomas L. Kay
No. 171701160

Scott L. Wiggins, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY
concurred.

POHLMAN, Judge:

¶1     In 2018, a jury convicted James Robert Dunne of retail theft. During trial, Dunne testified as the defense's primary witness, denying the allegations of theft. Dunne contends that the State improperly questioned him about plea negotiations in the case, arguing that the trial court exceeded its discretion in failing to grant a mistrial on that basis. We affirm.

BACKGROUND[1]

¶2    One night in March 2017, Dunne and his friend (Friend) drove together to a store intending to steal some items. Friend carried a blanket-covered car seat, which he put into a shopping cart before entering the store. Dunne, on the other hand, retrieved a shopping cart upon entering the store.

¶3    Once inside, Dunne and Friend did not shop together. Friend visited the electronics and the hardware departments and ultimately exited the store without paying for some items, which he had surreptitiously placed in the car seat under the blanket.

¶4    For his part, Dunne went to the infant and pharmacy departments, where he placed a large box of diapers and a humidifier into his cart. After both items were in his cart, but before approaching the registers at the front of the store, Dunne "fumbl[ed] in his pockets for a moment" and retrieved a piece of paper. Dunne then left the store without paying for either item. As he was leaving, one of the store's greeters (Greeter) followed him, twice asking to see his receipt. Rather than stop, Dunne quickly walked toward his car, waving a piece of paper and stating to Greeter, "I don't have to stop."

¶5    Greeter followed Dunne to his car and wrote down its license plate number. Greeter then reported the incident to one of the store's loss prevention associates (Associate). Associate reviewed the video surveillance of both Dunne and Friend and

_____

1. On appeal from a jury verdict, we view the evidence in a light most favorable to that verdict and recite the facts accordingly. *State v. Goins*, 2017 UT 61, ¶ 3 n.1, 423 P.3d 1236. "We present conflicting evidence only as necessary to understand issues raised on appeal." *Id.* (cleaned up).

observed their activities in the store, including their failure to pay for the items they took with them.

¶6    Approximately two weeks later, Associate observed Friend enter the store with a woman. Both were detained by law enforcement for stealing merchandise from the store on that occasion and were taken to the loss prevention office. Associate questioned Friend about the earlier theft and the identity of the person with him. Friend was not sure about his companion's last name but identified him as "Jimmy."

¶7    About a month later, Associate observed and photographed Dunne at one of the store's other locations in Utah. She testified that he wore the "same exact clothing, the same hoodie and the same hat" as he had during the theft. She later learned Dunne's identity and provided the information to the police.

¶8    The State charged Dunne with one count of retail theft.[2] Shortly before trial, the court held a hearing requested by defense counsel based on the expectation that Dunne would enter a guilty plea to the charge. However, counsel explained at

---

2. As defined in the Utah Code,

> A person commits the offense of retail theft when he knowingly: (1) Takes possession of, conceals, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the retail value of such merchandise . . . .

Utah Code Ann. § 76-6-602(1) (LexisNexis 2017).

the hearing that Dunne had decided not to accept the State's plea offer after all, and trial was rescheduled.

¶9     At trial, Greeter and Associate testified for the State. Greeter testified about his encounter with Dunne, while Associate testified to Greeter's report, her review of the surveillance video of the events, and her subsequent encounters with both Friend and Dunne. Additionally, during Associate's testimony, the jury was shown clips from the video surveillance captured by the store, which, among other things, showed Dunne exiting the store without stopping at the registers to pay.[3]

¶10     Friend also testified on behalf of the State, which had given him use immunity[4] to testify about the incident with Dunne. Friend testified that he and Dunne had driven to the store together on the night in question, that they were going to the store "to steal," and that afterward they drove away from the

---

3. In the video exhibits admitted during trial, Dunne is portrayed as walking completely around the register area to the front of the store and ultimately toward an exit, without stopping to pay.

4. "A witness who refuses, or is likely to refuse, on the basis of the witness's privilege against self-incrimination to testify or provide evidence or information in a criminal investigation . . . may be compelled to testify or provide evidence . . . after being granted use immunity with regards to the compelled testimony or production of evidence or information . . . . Testimony, evidence, or information compelled . . . may not be used against the witness in any criminal or quasi-criminal case, nor any information directly or indirectly derived from this testimony, evidence, or information, unless the testimony, evidence, or information is volunteered by the witness or is otherwise not responsive to a question." Utah Code Ann. § 77-22b-1(1)(a), (2) (LexisNexis 2017).

store together. He also confirmed that Dunne had stolen the diapers and the humidifier.

¶11    Dunne testified as the defense's primary witness. He testified on direct examination that he purchased the diapers and the humidifier for Friend's baby and that he showed his receipt to Greeter when he exited the store. When asked where the receipt was, Dunne stated that he lost it. He also denied going to the store to steal and testified that he was not aware Friend had stolen anything.

¶12    During cross-examination, when asked by the State whether "we can agree you don't want to get into trouble," Dunne stated that he would "take [the] blame" if what he had done was wrong but that he knew he had "bought those two items." And when questioned about whether he had "lied before to keep [him]self from getting into trouble in criminal cases," he admitted to pleading guilty to charges for felony theft and giving false information to a police officer. Dunne then testified on re-direct that he pleaded guilty to both crimes because he had committed them. But when asked by defense counsel why he did not plead guilty to the theft in the present case, Dunne explained that it was because he "did not steal" the items.

¶13    On re-cross, the following exchange took place:

> Q: . . . Mr. Dunne, you stated that in the past you've pled guilty when you're guilty, but you're not pleading guilty now because you're saying you're not guilty?
>
> A: I'm not guilty.
>
> Q: . . . Isn't it true in this case you were going to plead guilty until the State wouldn't give you the sentence you wanted?

A: No, I—no, I—

Q: Isn't it true you came into court and you were
going to plead guilty, but because I wouldn't give
you what you wanted, you changed position?

Defense counsel then objected, asserting that the questions went to inadmissible plea negotiations. The trial court immediately sustained the objection.

¶14   Outside of the jury's presence, defense counsel moved for a mistrial based on the exchange. Counsel argued that asking Dunne why he changed his mind about pleading guilty in this case was "improper under the Rules of Evidence" and that the question "should not have been posed." Counsel also contended that the question was "very prejudicial to Mr. Dunne" because it led the jury "to believe that [Dunne] is guilty of the crime and tried to plead guilty." And counsel asserted that a curative instruction would not be sufficient to "fix" the harm it caused.

¶15   In resolving the motion for a mistrial, the court framed the issue as whether the State's question about why Dunne chose not to plead guilty was "by itself enough to cause a mistrial" because "there was a question and no answer." The court ultimately concluded that the issue did not "rise[] to a mistrial." It also declined the State's suggestion that a curative instruction would be appropriate, stating that giving the jury a curative instruction would "just put more attention on the issue" and "make people think more about it."

¶16   The jury convicted Dunne as charged. He was sentenced to a suspended prison term, a short jail term, and a three-year probation, and he was ordered to pay restitution to the store. Dunne appeals.

ANALYSIS

¶17　On appeal, Dunne argues that the trial court erred by not granting a mistrial on the basis of the State's plea-negotiation questioning during its re-cross examination. Dunne argues that the plain language and the policy considerations behind rule 410 of the Utah Rules of Evidence[5] establish that the line of questioning was impermissible. He also argues that the questioning prejudiced his case because it was "inconsistent with [his] claim of innocence at trial" and "implied that [his] guilt was a foregone conclusion."

¶18　A trial court's denial of a mistrial motion is reviewed for abuse of discretion. *State v. Wach*, 2001 UT 35, ¶ 45, 24 P.3d 948. A trial court "should not grant a mistrial except where the circumstances are such as to reasonably indicate that a fair trial cannot be had and that a mistrial is necessary in order to avoid injustice." *State v. Duran*, 2011 UT App 254, ¶ 33, 262 P.3d 468 (cleaned up). "Because a district judge is in an advantaged position to determine the impact of courtroom events on the

---

5. Rule 410 of the Utah Rules of Evidence provides:

> [E]vidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
> (1) a guilty plea that was later withdrawn;
> (2) a nolo contendere plea;
> (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
> (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Utah R. Evid. 410(a).

total proceedings, once a district court has exercised its discretion and denied a motion for a mistrial," an appellate court "will not reverse the court's decision unless it is plainly wrong in that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial." *State v. Allen*, 2005 UT 11, ¶ 39, 108 P.3d 730 (cleaned up).

¶19 In evaluating whether a trial court's denial of a mistrial motion is "plainly wrong" in circumstances involving a potentially improper remark, our courts have looked to the totality of the evidence against the defendant as well as the context of the improper statement. *See id.* ¶¶ 39–44 (cleaned up) (explaining that a mistrial is not required where the allegedly improper statement is "not intentionally elicited, is made in passing," and is otherwise vague and lacking detail); *Wach*, 2001 UT 35, ¶¶ 44–46 (trial court did not exceed its discretion in denying a mistrial motion based on victim's isolated comment during direct examination suggesting she was generally afraid of the defendant given the "totality of the evidence" against the defendant).

¶20 In this respect, our courts have held that a mistrial is not required where, given the totality of the evidence, the potentially improper statement was not likely to have influenced the jury's decision. *See State v. Butterfield*, 2001 UT 59, ¶ 47, 27 P.3d 1133 (concluding that the trial court did not abuse its discretion in denying a mistrial motion where, in light of the totality of the evidence against the defendant, he had "failed to show that there is a substantial likelihood that the jury would have found him not guilty had the improper statement not been made"); *Wach*, 2001 UT 35, ¶ 46 (stating that, given the "totality of the evidence against [the defendant], and the reasonable inferences therefrom, it was not [the victim's] improper remark . . . that caused the jury to convict [the defendant] of aggravated kidnapping, but rather [the victim's] recounting of [the defendant's]" violence in perpetrating the crime); *State v. Yalowski*, 2017 UT App 177, ¶ 22,

404 P.3d 53 (concluding that a potentially improper statement "did not prejudice" the defendant where the "totality of the testimony presented" amply supported the defendant's conviction); *State v. Milligan*, 2012 UT App 47, ¶¶ 8–9, 287 P.3d 1 (concluding that an improper statement about the defendant's tattoo, while "potentially prejudicial and inflammatory," did not warrant a mistrial in light of the "strong evidence" presented as to the defendant's guilt).

¶21　Applying these principles, we conclude that the trial court did not exceed its discretion in denying Dunne's motion for a mistrial. Assuming without deciding that the prosecutor's question about Dunne's motive for not taking a plea in this case was improper, Dunne has not shown that the court's denial of his mistrial motion was "plainly wrong" in that the question "so likely influenced the jury" that Dunne "cannot be said to have had a fair trial." *See Allen*, 2005 UT 11, ¶ 39 (cleaned up). Rather, given the totality of the evidence against him and the context in which the allegedly improper question occurred, the court was within its discretion to conclude that the plea-negotiation reference did not affect Dunne's right to a fair trial. *See Butterfield*, 2001 UT 59, ¶ 47; *Wach*, 2001 UT 35, ¶ 45; *Duran*, 2011 UT App 254, ¶ 33.

¶22　Here, the evidence against Dunne was overwhelming. *See Wach*, 2001 UT 35, ¶ 46; *Yalowski*, 2017 UT App 177, ¶¶ 21–22; *Milligan*, 2012 UT App 47, ¶¶ 8–9. The jury heard evidence from Greeter and Associate, whose combined testimonies reinforced each other in providing the jury a basis to conclude that Dunne exited the store without paying for the diapers and the humidifier. Additionally, during Associate's testimony, the jury viewed numerous segments of the store's video surveillance that not only confirmed the key aspects of Greeter's testimony about his encounter with Dunne but also gave the jury visual evidence that Dunne failed to check out at any register and pay for the items in his cart before exiting the store. Finally, the jury also

heard Friend's testimony that he and Dunne went to the store on the night in question with the specific intent to steal and that Dunne had, in fact, stolen the diapers and the humidifier.

¶23 Additionally, the context in which the allegedly improper question occurred negates the likelihood that it influenced the jury's decision to convict. *See Allen*, 2005 UT 11, ¶¶ 40–44; *Yalowski*, 2017 UT App 177, ¶¶ 18–20. As the court recognized, the plea-negotiation reference was made by the State through a question that Dunne did not substantively answer. In response to the State's question about the reasons for his failure to plead guilty in this case (as opposed to previous cases), Dunne proceeded no further than stating, "No, I—no, I," before defense counsel objected.

¶24 Moreover, the court immediately sustained Dunne's objection, and no further reference was made to the plea negotiations in this case. *See Allen*, 2005 UT 11, ¶ 43 (explaining that a reference did not require mistrial where, among other things, "no further attention was directed" to the subject of the statement or the statement itself); *Duran*, 2011 UT App 254, ¶ 36 (noting, as evidence that a statement did not improperly influence the jury so as to require mistrial, that the "prosecutor did not follow up on the volunteered information with questions . . . or do anything else to call further attention to [the] issue" raised by the statement). Thus, even if the State *sought* through its question to elicit testimony from Dunne about the failed plea negotiations, due to counsel's intervention and the court's immediate resolution of the issue, the jury did not actually hear any such testimony.

¶25 In sum, given the strong evidence of guilt and the circumstances surrounding the prosecution's question, we cannot agree that the jury was "so likely influenced" by the reference to the plea negotiations in the State's question that the court was "plainly wrong" to deny Dunne's mistrial motion. *See*

*Wach*, 2001 UT 35, ¶¶ 45–46 (cleaned up); *see also Milligan*, 2012 UT App 47, ¶¶ 8–9. Rather, we agree with the trial court that the suggestion about Dunne's guilt posed by the State's plea-negotiation question did not rise to a level requiring a mistrial. Accordingly, we conclude that the trial court did not exceed its discretion by denying Dunne's motion for a mistrial.

## CONCLUSION

¶26 We affirm. Under the circumstances in this case, the trial court was within its discretion to conclude that the State's attempt to elicit testimony from Dunne about the failed plea negotiations did not require declaring a mistrial.

———————