2011 UT 70

**STATE of Utah, Plaintiff and Appellee,**

v.

**Victor HERNANDEZ, Defendant and Appellant.**

No. 20090080.

Supreme Court of Utah.

Nov. 8, 2011.

Mark L. Shurtleff, Att'y Gen., Christine F. Soltis, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Neal G. Hamilton, Elizabeth A. Lorenzo, Salt Lake City, for defendant.

## AMENDED OPINION *

On Certification from the Utah
Court of Appeals

Justice PARRISH, opinion of the Court:

### INTRODUCTION

¶ 1 This case requires us to determine whether article I, section 13 of the Utah Constitution entitles a defendant charged with Class A misdemeanors to a preliminary hearing. The district court denied Victor Hernandez's request for a preliminary hearing because it concluded that the right to a preliminary hearing guaranteed under article I, section 13 does not apply to Class A misdemeanors. We hold that it does and accordingly reverse the decision of the district court.

### BACKGROUND

¶ 2 On November 30, 2007, an information was filed charging Mr. Hernandez with four Class A misdemeanor offenses: negligent homicide, obstruction of justice, unlawful sale/supply of alcohol to minors, and possession of drug paraphernalia. On June 6, 2008, Mr. Hernandez filed a request for a preliminary hearing. He argued that article I, section 13 of the Utah Constitution guarantees the right to a preliminary hearing for defendants charged with felony or Class A misdemeanor offenses. The district court originally granted Mr. Hernandez's request for a preliminary hearing, but later, on a motion to reconsider, denied it. The district court found that the offenses with which Mr. Hernandez was charged did not exist and were not indictable offenses under Utah territorial law. Accordingly, it held that he was not

* An addition was made by adding footnote 3.

entitled to the protections provided by article I, section 13. Mr. Hernandez filed a petition for interlocutory appeal challenging the district court's denial of his request for a preliminary hearing. The court of appeals granted Mr. Hernandez's petition for interlocutory appeal and then certified his appeal to this court. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(b) (Supp. 2010).

## STANDARD OF REVIEW

¶ 3 Interpretation of the Utah Constitution is a question of law. *State v. Timmerman*, 2009 UT 58, ¶ 7, 218 P.3d 590. We therefore review for correctness the district court's determination that article I, section 13 of the Utah Constitution does not grant Mr. Hernandez the right to a preliminary hearing. Under this correctness standard of review, we give no deference to the district court's legal conclusions. *Id.*

## ANALYSIS

### I. THE DISTRICT COURT ERRED WHEN IT DETERMINED THAT ARTICLE I, SECTION 13 OF THE UTAH CONSTITUTION DOES NOT APPLY TO CLASS A MISDEMEANORS

¶ 4 Article I, section 13 of the Utah Constitution provides that *"[o]ffenses heretofore* required to be prosecuted by indictment, shall be prosecuted by information after *examination and commitment* by a magistrate, unless the examination be waived by the accused with the consent of the State, or by indictment, with or without such examination and commitment." UTAH CONST. art. I, § 13 (emphases added).

¶ 5 Relying on article I, section 13, Mr. Hernandez argues that defendants charged with Class A misdemeanors are entitled to a preliminary hearing. Specifically, he argues that the phrase "offenses heretofore" refers to a class of offenses over which district courts had original jurisdiction under Utah territorial law and that, under Utah territorial law, district courts had original jurisdiction over "indictable offenses." Under territorial law, "indictable offenses" were crimes punishable by imprisonment of more than six months. Because Class A misdemeanors are punishable by imprisonment of more than six months, Mr. Hernandez argues that they constitute "indictable offenses" that must be prosecuted by information after "examination and commitment" by a magistrate. Mr. Hernandez further contends that the "examination and commitment" referred to in article I, section 13 means a preliminary hearing.

¶ 6 The State disagrees that the phrase "offenses heretofore" refers to "indictable offenses" under Utah territorial law. Rather, it argues that the phrase refers only to felony offenses for which an accused was entitled to a grand jury indictment under the Fifth Amendment to the United States Constitution. The State also disagrees that "examination and commitment" means a preliminary hearing.

¶ 7 We first consider what offenses are entitled to the protections afforded by article I, section 13 of the Utah Constitution. Because we determine that article I, section 13 refers to offenses that were considered "indictable" under Utah territorial law, we then consider what constituted an "indictable offense" in the Utah Territory. We finally consider what type of proceeding is contemplated by the "examination and commitment" requirement.

### A. Article I, Section 13 Refers to Utah Territorial Law

¶ 8 We first consider which offenses were "heretofore required to be prosecuted by indictment" as that phrase is used in article I, section 13 of the Utah Constitution. In interpreting our constitution, our goal is to ascertain the drafters' intent. *Am. Bush v. City of S. Salt Lake*, 2006 UT 40, ¶ 12, 140 P.3d 1235. Because the best evidence of the drafters' intent is the text itself, our analysis "begin[s] with a review of the constitutional text." *Dexter v. Bosko*, 2008 UT 29, ¶ 11, 184 P.3d 592. Our textual interpretation "recognize[s] that constitutional 'language ... is to be read not as barren words found in a dictionary but as symbols of historic experience illumined by the presuppositions of those who employed them.'" *Am. Bush*, 2006

UT 40, ¶ 10, 140 P.3d 1235 (second alteration in original) (quoting *Dennis v. United States,* 341 U.S. 494, 523, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (Frankfurter, J., concurring)). Therefore, our interpretation is informed not only by the plain meaning of the text but also by "historical evidence of the [drafters'] intent." *Id.* Additionally, our interpretation "may consider well-reasoned and meaningful decisions made by courts of last resort in sister states with similar constitutional provisions." *Id.*

█ ¶ 9 We therefore begin with the text of article I, section 13. This provision specifies the procedure for prosecuting "[o]ffenses heretofore required to be prosecuted by indictment." UTAH CONST. art. I, § 13. The drafters' choice of the phrase "offenses heretofore" is revealing. The word "offense" means "[a] violation of the law; a crime, often a minor one." BLACK'S LAW DICTIONARY 1110 (8th ed. 2004). This word "comprehend[s] every crime and misdemeanor, or may be used in a specific sense as synonymous with 'felony' or with 'misdemeanor,' as the case may be." 22 C.J.S. *Criminal Law* § 3 (1989). As for the term "heretofore," it means "[u]p to now; before this time." BLACK'S LAW DICTIONARY 745. Thus, the plain meaning of the phrase "offenses heretofore" is any crime—felony or misdemeanor—that up to now has been required to be prosecuted by indictment. Our next task therefore is to determine which crimes were required to be prosecuted by indictment up to the adoption of the Utah Constitution.

¶ 10 To answer this question, we turn to the historical context in which article I, section 13 was adopted. The State argues that this provision refers only to felony offenses because only felony offenses were required to be prosecuted by indictment under the federal constitution. Before statehood, the Utah Territory was required to abide by the Fifth Amendment to the United States Constitution, which required that felonies be prosecuted by indictment. The State therefore

reasons that the phrase "offenses heretofore required to be prosecuted by indictment" applies only to those crimes that were required to be prosecuted by indictment under federal law. The State further reasons that because the Fifth Amendment did not apply to the states, upon achieving statehood, Utah was free to adopt a different procedure for prosecuting felony offenses and that article I, section 13 reflects the framers' intent that felony offenses could be prosecuted either by way of information or indictment. We are unpersuaded by the State's reasoning.

¶ 11 While the State correctly notes that the Fifth Amendment applied to the territories of the United States, *see State v. Rock,* 20 Utah 38, 57 P. 532, 533 (1899); *Thompson v. Utah,* 170 U.S. 343, 348–49, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), *overruled on other grounds by Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), it fails to recognize that the Utah Territory was also governed by its own territorial law. *State v. Norman,* 16 Utah 457, 52 P. 986, 988 (1898).[1] And while Utah territorial law could not abridge the protections provided by the United States Constitution, it could provide broader protections. *Id.* (noting that if territorial law was not disapproved by Congress "it was valid, unless in conflict with the constitution of the United States, or unless the legislation of congress on the same subject was exclusive"); *cf. Mills v. Rogers,* 457 U.S. 291, 300, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982) ("State law may recognize liberty interests more extensive than those independently protected by the Federal Constitution."). Indeed, Utah territorial law did provide broader protections than those contained in the Fifth Amendment. While the Fifth Amendment right to prosecution by indictment applied only to felonies, Utah territorial law extended this right to misdemeanors punishable by more than six months in the city or county jail. *See* UTAH COMP. LAWS §§ 3023, 4783 (1888) (stating that every pub-

---

1. Consistent with its power to "make all needful Rules and Regulations respecting the [United States] Territory," in 1850, Congress enacted "An Act to Establish a Territorial Government for Utah" (the "Organic Act") and vested legislative power for the Utah Territory in a governor and a legislative assembly. U.S. CONST. art. IV, § 3 cl. 2; An Act to Establish a Territorial Government for Utah, ch. 51, 9 Stat. 453 (1850). The Organic Act provided "[t]hat the legislative powers of said Territory shall extend to all rightful subjects of legislation, consistent with the Constitution of the United States and the provisions of this act." *Id.*

lic offense must be prosecuted by indictment, except offenses triable in justice courts, and providing that justice courts do not have jurisdiction over crimes punishable by imprisonment in the city jail for more than six months).

¶ 12 The conclusion that article I, section 13 refers to "offenses heretofore required to be prosecuted by indictment" under Utah territorial law as a whole and not just to those offenses indictable under the Fifth Amendment is also supported by other provisions in the Utah Constitution. These provisions recognize that previously applicable laws included Utah territorial law. *See West v. Thomson Newspapers*, 872 P.2d 999, 1015 (Utah 1994) (noting that constitutional provisions should be read in a manner that is consistent with similar constitutional provisions). For instance, article XXIV, section 2 of the Utah Constitution states that "[a]ll laws of the Territory of Utah now in force, not repugnant to this Constitution, shall remain in force until they expire by their own limitations, or are altered or repealed by the Legislature." UTAH CONST. art. XXIV, § 2. And article VIII, section 8, states that "[t]he jurisdiction of justices of the peace shall be as now provided by law." *Id.* art. VIII, § 8 (amended 1984). Under these provisions, territorial laws extending preliminary hearings to those individuals charged with an "indictable offense" remained in effect following statehood. Thus, "the government for the State [was] complete and operative from the very time of the taking effect of the Constitution." *State ex rel. Breeden v. Lewis*, 26 Utah 120, 72 P. 388, 390 (1903).

¶ 13 The debates from Utah's Constitutional Convention support our conclusion that article I, section 13 refers to Utah territorial law as a whole-not just to federal constitutional requirements. *See, e.g., Am. Bush*, 2006 UT 40, ¶¶ 42–43, 140 P.3d 1235 (utilizing the debates from the constitutional convention to inform the interpretation of state constitutional text). During the constitutional convention, the drafters discussed the meaning of "heretofore" in article I, section 13:

Mr. WELLS. Mr. Chairman, I only wish to say before the committee begin[s]

firing at this section that it is almost the same as in the states of Michigan, Wisconsin, Washington, Colorado and California, and in all those states I am informed that this system has worked extremely well.

Mr. BOWDLE offered the following as a substitute for section 13:

No person shall be held to answer in a criminal case except on information after examination and commitment by a magistrate or on an indictment with or without examination and commitment.

Mr. EVANS (Weber). I think the only difference is in the number of grand jurors.

Mr. BOWDLE. Practically that is true. The only objection that I have to the first part of the section is "offenses heretofore required to be prosecuted by indictment," that is taken from the California revised or new constitution, and undoubtedly they had in mind their old constitution. Now, we have no organic existence as a State until this Constitution is adopted and we are admitted, and we are not looking back to a time when, as a State, we were prosecuting crimes in a different way, and it seems to me that it is preferable in that respect. It does not change the substance a particle, but it reads here, "offenses heretofore required to be prosecuted by indictment." Heretofore prosecuted where? Not in the State of Utah.

Mr. EICHNOR. *In the Territory.*

Mr. BOWDLE. That is the only point I have.

Mr. MALONEY. Mr. Chairman, the provision as contained here is in the constitution of the state of Washington. They *meant under the territorial system.* Section 25 of the Washington constitution provided that offenses heretofore required to be prosecuted by indictment, and so on— so that the committee is right and this ought to be adopted as is.

1 OFFICIAL REPORT OF THE PROCEEDINGS AND DEBATES OF THE CONVENTION ASSEMBLED TO ADOPT A CONSTITUTION FOR THE STATE OF UTAH 313 (1898) (emphases added).

¶ 14 In this discussion, the framers specifically indicated that the phrase "heretofore"

referred to Utah territorial law. The framers also noted that article I, section 13 was modeled after other state constitutions that used similar language to refer to the body of law in effect prior to their adoption.

¶ 15 Finally, although we have never addressed the issue of whether article I, section 13 refers to Utah territorial law, we have repeatedly stated that this section applies to "indictable misdemeanors." For example, in *State v. Nelson*, we noted that the language of article I, section 13 of the Utah Constitution is

> plain and unequivocal. Its meaning cannot be misunderstood by any[one] who reads it with ordinary care. It means that a felony or *an indictable misdemeanor*, after the adoption of the Constitution, could only be prosecuted in one of two ways: (1)[b]y information after examination and commitment by a magistrate ...; and (2) by indictment with or without such examination and commitment."

52 Utah 617, 176 P. 860, 861 (1918) (emphases added); *see also State v. Johnson*, 100 Utah 316, 114 P.2d 1034, 1044 (1941) (Pratt, J., concurring) (noting that article I, section 13 of the Utah Constitution, "deal[s] with felonies and indictable misdemeanors but not with misdemeanors").

¶ 16 The State argues that the United States Supreme Court's decision in *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), supports its position that the phrase "[o]ffenses heretofore required to be prosecuted by indictment" in article I, section 13 refers only to those cases required to be indicted under the Fifth Amendment to the United States Constitution. It also argues that the constitutions of sister states after which article I, section 13 was patterned have been interpreted to apply to only felony offenses. *See Sekt v. Justice's Court*, 26 Cal.2d 297, 159 P.2d 17 (1945); *Garnsey v. State*, 4 Okla.Crim. 547, 112 P. 24 (Okla. Crim.App.1910); *McCarty v. State*, 1 Wash. 377, 25 P. 299 (1890). Neither argument is persuasive.

¶ 17 The United States Supreme Court's decision in *Thompson* did not address the issue of whether article I, section 13 or any other provision of the Utah Constitution refers to federal or territorial law. Rather, *Thompson* addressed whether article I, section 10 of the Utah Constitution, which required conviction by a unanimous vote of eight jurors, applied ex post facto to deprive an individual charged with a felony while Utah was a territory of his federal constitutional right to twelve jurors. 170 U.S. at 345–46, 18 S.Ct. 620. The Court held that because the Sixth Amendment applied to the Utah Territory, article I, section 10 could not be applied retroactively to deprive the defendant of his rights under previously applicable federal law. *Id.* at 346, 18 S.Ct. 620. The State argues that because the Sixth Amendment governed the Utah Territory, the Fifth Amendment must also have applied to the territory and therefore the language "heretofore" in article I, section 13 must refer to federal law.[2] But the fact that federal constitutional guarantees applied to the Utah Territory is not the question. The question is whether Utah territorial law imposed additional guarantees that were encompassed by the use of the "heretofore" language in article I, section 13 of the Utah Constitution. And *Thompson* does not bear on this question.

¶ 18 The State also argues that the "heretofore" language in the state constitutions upon which article I, section 13 was patterned has been interpreted to apply to only felony offenses. But the cases on which the State relies do not even discuss whether the state constitutional provisions in question incorporate the protections of the Fifth Amendment or the protections provided by the prior laws in effect in those states. *See Sekt*, 159 P.2d 17; *Garnsey*, 112 P. 24; *McCarty*, 25 P. 299. Instead, these cases discuss whether a felony committed prior to the enactment of a state constitutional provision that allowed for felonies to be prosecuted by information were required to be prose-

---

2. *Thompson's* ex post facto analysis has since been rejected by the United States Supreme Court in *Collins v. Youngblood*, 497 U.S. 37, 46–47, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). But its discussion is still valid to the extent it relates to the applicability of federal constitutional law ~~to~~ within the United States Territories.

cuted by indictment under the previously applied law. *See Garnsey*, 112 P. at 25 ("The only question which the record presents is: Can the state proceed by information against a person charged with the commission of a felony before statehood ... ?"); *McCarty*, 25 P. at 299 ("When a statute requiring an indictment is repealed, an information will not lie for an offense committed before the repeal."); *see also Sekt*, 159 P.2d at 19 ("Until the adoption of the present [California] Constitution in 1879 there was no constitutional authority for the prosecution of major criminal offenses by information."). These cases are also unhelpful because prior to the adoption of these constitutional provisions, the law in effect in many of our sister states mirrored the protections provided by the Fifth Amendment and required indictment only in cases of felonies. *See People v. Campbell*, 59 Cal. 243, 244 (1881) (" '[N]o person shall be held to answer for a capital or otherwise infamous crime ... unless on presentment or indictment of a Grand Jury.' " (alteration in original) (quoting CAL. CONST. art. I, § 8 (1863))); *Garnsey*, 112 P. at 28 ("The laws of Oklahoma Territory provided ... that [e]very felony must be prosecuted by indictment in the district court." (citation and internal quotation marks omitted)). Thus, while the language of these constitutions may be identical to the language of the Utah Constitution, because the law in effect prior to their enactment differed from Utah territorial law, the cases addressing these constitutional provisions are simply not apposite. In short, nothing in the State's argument undercuts our conclusion that the plain language of article I, section 13 refers to offenses that were previously indictable under Utah territorial law.

### B. "Indictable Offenses" Include Class A Misdemeanors

▌ ¶ 19 Having determined that the protections of article I, section 13 apply to those offenses that were indictable under territorial law, we next consider which offenses fall within this category. The district court determined that a misdemeanor is an "indictable offense" if, at the time the Utah Constitution was drafted, the particular offense was required to be prosecuted by indictment.

Because the specific offenses with which Mr. Hernandez was charged did not exist under Utah territorial law, the district court concluded he was not entitled to article I, section 13 protection. We disagree with the district court's approach because it would unduly limit article I, section 13 protection to the list of those particular crimes recognized at the time of statehood.

▌ ¶ 20 There is nothing to suggest that the framers of the Utah Constitution intended to forever restrict preliminary hearings to only those specific offenses addressed by Utah territorial law. Indeed, the question of which offenses were indictable under our territorial law was not determined by looking to a list of specific offenses. Rather, our territorial scheme classified those offenses that were required to be prosecuted by indictment based on the associated punishment. And categories of those offenses that warranted more serious punishment were entitled to a greater degree of protection. Our conclusion in this regard is supported by both Utah territorial law and the Fifth Amendment to the United States Constitution, with which Utah territorial law was required to comply. *See, e.g., Am. Bush*, 2006 UT 40, ¶ 11, 140 P.3d 1235 (using the United States Constitution to inform the meaning of the Utah Constitution). The Fifth Amendment to the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment." U.S. CONST. amend. V. And whether an offense is "infamous" under the Fifth Amendment does not depend on the elements of the particular crime but rather on the nature of the associated punishment. *See In re Mills*, 135 U.S. 263, 267, 10 S.Ct. 762, 34 L.Ed. 107 (1890); *Mackin v. United States*, 117 U.S. 348, 350–55, 6 S.Ct. 777, 29 L.Ed. 909 (1886). A punishment is "infamous" under the Fifth Amendment if it is "punishable by imprisonment [in the state penitentiary] for a term of years." *Mackin*, 117 U.S. at 350, 6 S.Ct. 777. Because Utah territorial law defined felony offenses as those offenses that were punishable by more than a year of imprisonment in the state penitentiary, the Utah Territory was required to prosecute

felony offenses by indictment pursuant to the Fifth Amendment. *See* UTAH COMP. LAWS §§ 4380–81 (1888) (defining felony as a crime which, unless otherwise prescribed, is punishable by death or imprisonment not to exceed five years). Utah territorial law went one step further and required any offense that was punishable by imprisonment in excess of six months also be prosecuted by indictment. *Id.* §§ 3023, 4783. Thus, like the Fifth Amendment, Utah territorial law determined the applicability of the indictment requirement based on the severity of the punishment rather than on the elements of any particular offense.

¶ 21 We conclude that the framers' reference to territorial law in article I, section 13 does not limit its applicability to those specific crimes that were classified as "indictable" when article I, section 13 was enacted. Rather, the drafters intended to provide article I, section 13 protection to all individuals who were facing imprisonment terms of more than six months. Because those offenses classified as Class A misdemeanors are punishable by imprisonment in excess of six months, *see* UTAH CODE Ann. § 76–3–204(1) (2008), such offenses fall within the definition of "indictable offenses." The district court therefore erred in determining that article I, section 13 does not apply to Class A misdemeanors.

## II. "EXAMINATION AND COMMITMENT" MEANS A PRELIMINARY HEARING

¶ 22 The State argues that even if article I, section 13 applies to Class A misdemeanors, it does not require a preliminary hearing. The State reasons that this section merely requires magistrate review of an affidavit "sworn to by a person having reason to believe that the offense has been committed." UTAH R.CRIM. P. 4(a). And it argues that rules 4(a) and 5(a) of the Utah Rules of Criminal Procedure satisfy this requirement by mandating that magistrates review an information and affidavit for probable cause before issuing an arrest warrant or summons.

¶ 23 The plain language of article I, section 13 is inconsistent with the State's position.

It provides that "[o]ffenses ... shall be prosecuted by information after examination and commitment by a magistrate, *unless the examination be waived* by the accused with the consent of the State." UTAH CONST. art. I, § 13 (emphasis added). The term "examination" is defined as "[t]he questioning of a witness under oath." BLACK'S LAW DICTIONARY 601. This term connotes an evidentiary hearing that is inconsistent with a magistrate review of an affidavit to determine whether it establishes probable cause for an arrest warrant. Additionally, article I, section 13 provides that the "examination" can be "waived by the accused with the consent of the State." Because a defendant is not involved in a magistrate's initial review of an arrest warrant or summons, there is no mechanism by which a defendant could waive this examination. We therefore conclude that the examination to which article I, section 13 refers must be an evidentiary hearing that takes place subsequent to the arrest of the defendant.

¶ 24 Our conclusion that the examination and commitment clause requires a more searching inquiry than simple review of an arrest warrant is also supported by historical context. The prosecution of "indictable offenses" in Utah has historically involved a two-step process. The first step involves securing the presence of the defendant before the magistrate; the second step involves binding the defendant over for trial.

¶ 25 Under Utah territorial law, the first step was satisfied by the issuance of an arrest warrant. To obtain an arrest warrant, an information alleging the commission of a public offense was filed with a magistrate. UTAH COMP LAWS § 4837 (1888). The magistrate then "examine[d] on oath the informant or prosecutor, and any witnesses he may produce, and [took] their depositions in writing." *Id.* If, based on these depositions, the magistrate was "satisfied ... that the offen[s]e complained of [had] been committed, and that there [was] reasonable ground to believe that the defendant [had] committed it," he was required to issue an arrest warrant. *Id.* § 4839.

¶ 26 The second step of the process involved an "examination of the case." *Id.* §§ 4872–96. During this examination, the magistrate was to determine whether sufficient evidence existed to hold the defendant. *Id.* In making this determination, the magistrate could not rely on the fact that probable cause had existed for the issuance of the arrest warrant. *Id.* §§ 4885–86; *see also United States v. Eldredge,* 5 Utah 161, 13 P. 673, 676 (Utah Terr.1887) ("At the examination, the information ... taken before the issuance of the warrant do[es] not become the basis of the magistrate's action in holding the accused to answer in the district court, but he proceeds to an examination of the witnesses...."). Rather, the magistrate was required to find probable cause by weighing evidence and "examining the witnesses." UTAH COMP. LAWS § 4879 ("The witnesses must be examined ... and may be cross-examined in [the defendant's] behalf."); *Eldredge,* 13 P. at 676. If probable cause could not be established, the defendant was to be discharged. UTAH COMP LAWS § 4885.

¶ 27 The "examination" requirement under article I, section 13 is consistent with the territorial examination conducted subsequent to the arrest of a defendant. Indeed, this conclusion is supported by the Utah constitutional debates, where one of the framers proposed an amendment that would allow a defendant to waive the right to an article I, section 13 "examination" without the approval of the State. In response to the proposed amendment, Mr. Varian stated,

> I trust that amendment will not prevail. There are many times when the defendant is very ready to waive examination. He does not want the examination to be had. He is willing to go right before the grand jury. He is willing to take his chances on the witnesses dying, being scattered, and getting out of the Territory; there are many times when the prosecutor in the interest of the State, feels it his duty to *examine the evidence and have it opened up.* This makes it one-sided. If the defendant chooses to waive it, no matter what the interests of the State might be, the examination could not be had.

1 OFFICIAL REPORT OF THE PROCEEDINGS AND DEBATES OF THE CONVENTION ASSEMBLED TO ADOPT A CONSTITUTION FOR THE STATE OF UTAH 314 (emphasis added). Mr. Varian's statement indicates that the "examination" that the drafters intended was similar in purpose to the territorial procedure for holding a defendant over for an indictment, in that the "examination" would not merely involve a review of deposition testimony but would require an actual "examination of the evidence," where it could be "opened up."

¶ 28 The procedure for binding a defendant over for indictment under Utah territorial law is closely approximated by our current procedure for binding a felony defendant over for trial. Our rules of criminal procedure contemplate preliminary hearings in felony offenses for the purpose of determining whether probable cause exists to hold a defendant for trial. UTAH R.CRIM. P. 7(h). The probable cause determination made during this hearing involves a distinctly separate and more searching examination than that required to issue an arrest warrant. Indeed, the preliminary hearing required under rule 7 is similar to the examination required under territorial law in that both procedures contemplate examination of witnesses and presentation of evidence. *See State v. Virgin,* 2006 UT 29, ¶ 31, 137 P.3d 787 ("Although the [preliminary] hearing is not a trial per se, it is not an ex parte proceeding nor one-sided determination of probable cause, and the accused is granted a statutory right to cross-examine the witnesses against him, and ... present witnesses in his defense." (internal quotation marks omitted)). We accordingly hold that the examination required by article I, section 13 is equivalent to the preliminary hearing contemplated by rules 7(h) and 7(g) of the Utah Rules of Criminal Procedure.

## CONCLUSION

¶ 29 Article I, section 13 grants defendants the right to a preliminary hearing for indictable offenses, including Class A misdemeanors.[3] Because Mr. Hernandez was

---

3. Because the failure to hold a preliminary hear-

ing is mooted by the entry of a guilty plea or

charged with Class A misdemeanors, the district court erred in not granting his request for a preliminary hearing. We therefore reverse the decision of the district court and remand for further proceedings consistent with this opinion.

¶ 30 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Justice LEE concur in Justice PARRISH's opinion.

finding of guilt at trial, our holding that Article I, section 13 grants defendants charged with Class A misdemeanors the right to a preliminary hearing is to have prospective application only. It accordingly applies only to those cases in which there has been no guilty plea or finding of guilt as of the date of this decision.

