2023 UT App 77

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
HOUSTON RAEFAT HARARAH,
Appellant.

Opinion
No. 20220276-CA
Filed July 20, 2023

Eighth District Court, Vernal Department
The Honorable Edwin T. Peterson
The Honorable Gregory M. Lamb
No. 201800299

Nicolas C. Wilde and Trevor J. Lee,
Attorneys for Appellant

Tegan M. Troutner and Rachelle Shumway,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

MORTENSEN, Judge:

¶1 Houston Raefat Hararah was charged with assault for throwing a potted plant at his then-girlfriend. He waived his right to a preliminary hearing and proceeded to trial, following which he was convicted. He now contends that he was coerced into waiving his right to a preliminary hearing because the district court[1] stated, at various points in the proceedings, that it would

---

1. Relevant here, Judge Peterson presided over the July 2020 hearing, the August 2020 hearing, and the September 2020 hearing. Judge Lamb presided over the jury trial and the
(continued…)

not permit Hararah to accept any plea deal if he chose to have a preliminary hearing. But the record indicates that Hararah rejected the State's "best offer" and independently decided to waive the preliminary hearing and proceed to trial, so we cannot agree that the court forced his waiver. Hararah also asserts that his defense counsel (Counsel[2]) provided ineffective assistance for not objecting to the court's allegedly problematic statements, as well as for telling the jury, during opening statements at trial, that they would not hear that Hararah had punched the victim, when the victim went on to testify that he did so. We do not agree that his counsel performed deficiently in either respect, so we affirm.

BACKGROUND

¶2      After police responded to an argument between Hararah and his then-girlfriend, Hararah was charged with assault, with a domestic violence enhancement. The Information alleged that Hararah "threw a potted plant at his girlfriend[,] striking her in the face and causing a cut above her eye." As a result, the district court issued a no-contact order against Hararah. At a hearing to review the no-contact order, held in July 2020, the following exchange took place between Hararah, the district court, and Counsel:

> Counsel:   Judge, do you want to keep [the next hearing] on the 28th? I think that at this point, I've discussed a plea with Mr. Hararah and it looks like we're

---

sentencing hearing. To distinguish the actions of each judge, we use "district court" when discussing Judge Peterson's actions and "trial court" when discussing Judge Lamb's actions.

2. Hararah was represented by two attorneys. There is no need to identify the actions of each, so we refer to them both as Counsel.

> probably going to be setting it for a preliminary hearing.
>
> District Court: Well, let's go ahead and . . . take it on the 28th and see—Mr. Hararah, do you understand if you go to preliminary hearing, you're going to trial on the original charges? I won't allow a plea negotiation after that.
>
> Hararah: Yes, Your Honor.
>
> District Court: Okay. Well, you think long and hard on that and I'll talk to you on the 28th. Thank you.

¶3 The minutes for the next hearing, held in August 2020, indicate that "[t]he defendant request[ed] a Preliminary Hearing" and that "the [c]ourt set[] this matter for Preliminary Hearing."

¶4 In court on the date set for the preliminary hearing, in September 2020, Counsel said, "I've had a chance to speak with Mr. Hararah, [and] he's willing to waive his right to a preliminary hearing and we can set the case for trial—for the next step." Then the following exchange took place:

> District Court: So you talked to [Counsel] about what a preliminary hearing is[,] right?
>
> Hararah: Yes.
>
> District Court: Okay. And you are, in fact, willing to waive your rights to a preliminary hearing and allow the matter to be bound over; is that correct?

Hararah:    Yes.

District    Very good. I will go ahead and allow
Court:      the waiver[;] I'll bind the matter over.
            How long do you think you need to
            have discussions, [Counsel]?

Counsel:    Your Honor, I think that the best offer
            has been made and Mr. Hararah has
            had a chance to discuss it, and I think
            we're just going to need to figure out
            when we can get it on for a trial as
            soon as possible in front of a jury.

Later in the hearing, the district court added,

District    [W]e will have a trial as soon as
Court:      possible. And seeing as we did not go
            to prelim, we could still have
            discussions regarding, you know,
            some other outcome to the . . .
            litigation.

¶5     The case eventually went to trial, and during opening statements, Counsel said to the jury, "You will not hear any testimony about [Hararah] punching [the alleged victim] . . . . [Y]ou'll hear . . . that the only item that he had to protect himself from [a] taser [the alleged victim held] was the plant that was on the floor. And he picked it up and he threw it so that he could get out . . . ."

¶6     But when the victim testified, she stated that Hararah had hit her through a pillow. She testified that the pair had been drinking and started arguing when "[a] verbal argument turned into a physical [one]." She said, "I had tried knocking over his drink. I knew the conversation wasn't ending anywhere. He ended up on top of me hitting me." She described how she tried

to leave the room but "was hit in the face" with "a pillow and his fist." She clarified that "he was punching [her] and hitting [her] through the pillow."

¶7     Later in the trial and outside the presence of the jury, Counsel objected to "the uncharged misconduct that we've now heard about for the first time today, which is this witness . . . now saying that she was punched in the face by Mr. Hararah prior to the throwing of the plant." Counsel asserted, "That is nowhere in the State's discovery. It is not in the officer's report, it isn't anywhere in the body cam. And so what we are now entertaining is the fact that these jurors can . . . believe that the bruising on her face comes from those punches rather than from the plant." Counsel explained why this was problematic: "We don't have the ability to bring in a rebuttal expert to say, 'Hey, do you think these bruis[es] came from punching or . . . from a plant?' So, I maintain that [this] is prejudicial." The trial court responded, "I've previously ruled during the course of the trial that I would allow the testimony as long as it was consecutive to the day . . . in question [and] I would allow testimony from . . . the witness about the arguing and the conduct that happened during that date in question."

¶8     The State went on to call the deputy who had arrested Hararah. On cross-examination, he testified that "[t]he only assault [he] was aware of was the plant being thrown," and he agreed that if the victim had "mentioned being punched in the face, [he] would have put that in [his] report." In closing arguments, Counsel portrayed the victim as an unreliable witness based on the inconsistencies between her previous accounts of what happened and her trial testimony.

¶9     Ultimately, the jury found Hararah guilty of domestic violence-related assault. Hararah now appeals.

ISSUES AND STANDARDS OF REVIEW

¶10 Hararah presents two issues on appeal. First, he asserts that the district court erred "when it coerced [him] into waiving his right to a preliminary hearing by threatening to not allow him to accept a plea bargain from the State if he exercised his fundamental right to a preliminary hearing." He argues that this error "violated Article I, Section 13 and Article V, Section 1 of the Utah Constitution; Utah Rules of Criminal Procedure 7(e) and 11(i); and our adversarial system of justice." Hararah admits that this "issue was not preserved," but he claims that "either the exceptional circumstances exception or the plain error exception applies here."

¶11 Second, Hararah asserts that Counsel provided ineffective assistance in two respects: (1) by "fail[ing] to object to the district court coercing [Hararah] into waiving his fundamental right to a preliminary hearing" and (2) by telling the jury "during opening statements that the jury would not hear any testimony about the alleged victim being punched." "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and [the appellate court] must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Reid*, 2018 UT App 146, ¶ 17, 427 P.3d 1261 (cleaned up), *cert. denied*, 432 P.3d 1225 (Utah 2018).

ANALYSIS

I. Preliminary Hearing Waiver

¶12 Hararah argues that the district court "violated [his] rights . . . when it—by threatening to prevent him from accepting a plea deal from the State—forced him to waive his right to a preliminary hearing." Hararah acknowledges that he did not object or otherwise preserve this argument. He argues that either

the plain error exception or the exceptional circumstances exception applies. But Hararah cannot prevail under either theory.

A.    Plain Error

¶13    To show plain error, "a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (cleaned up).

¶14    We first address Hararah's argument that the district court erred by "coercing" or "forcing" him to waive his right to the preliminary hearing. Hararah takes issue with the district court's statement made at the July 2020 hearing: "Mr. Hararah, do you understand if you go to preliminary hearing, you're going to trial on the original charges? I won't allow a plea negotiation after that." The advisability of this comment[3] is immaterial here

---

3. Rule 11 of the Utah Rules of Criminal Procedure indicates that while judges have discretion to "decide[] that final disposition should not be in conformity with [a] plea agreement" and to therefore diverge from the plea agreement, Utah R. Crim. P. 11(i)(3), as well as to reject a plea recommendation that involves "a plea to a lesser included offense" or "the dismissal of other charges," *id.* R. 11(h)(1), they may "*not participate in plea discussions prior to any plea agreement being made by the prosecuting attorney*," *id.* R. 11(i)(1) (emphasis added).

A judge plays a critical "role as an impartial, neutral official." *State v. Beck*, 2007 UT 60, ¶ 24, 165 P.3d 1225. We condemn any improper insertion by a trial court into the plea-bargaining process that compromises this position.

(continued…)

because the record indicates that Hararah chose to waive his right to a preliminary hearing for reasons unrelated to the district court's statement. In other words, the record is clear that the court did not, in fact, force or coerce Hararah to waive the preliminary hearing because he made an independent choice to waive it.

¶15 At the outset of the September 2020 hearing, Counsel said, "I've had a chance to speak with Mr. Hararah, [and] he's willing to waive his right to a preliminary hearing and we can set the case for trial—for the next step." Critically, Counsel also said during that hearing that "the best offer has been made and Mr. Hararah has had a chance to discuss it, and I think we're just going to need to figure out when we can get [the case set] for a trial as soon as possible in front of a jury."

---

Specifically, we are troubled by the possibility that a court may condition the permissibility of plea bargaining on waiver of a preliminary hearing. The right to a preliminary hearing is enshrined in our state constitution, and it cannot be so lightly tossed aside. *See* Utah Const. art. I, § 13; *State v. Schmidt*, 2015 UT 65, ¶ 17, 356 P.3d 1204; *State v. Hernandez*, 2011 UT 70, ¶ 29, 268 P.3d 822. A court (as opposed to a prosecutor) must not treat the preliminary hearing as a bargaining chip—for calendar management or otherwise—as the court is not permitted to participate in the bargaining process between the State and the defendant. *See* Utah R. Crim. P. 11(i)(1).

But we need not decide whether the court participated in plea negotiations here because—on this record—the court did not enforce any alleged restrictions—temporal or otherwise—related to the plea-bargaining process between Hararah and the State. As we explain below, Hararah independently waived his right to a preliminary hearing and declined the State's plea offer. Still, we urge courts to be mindful of their limited role related to the plea-bargaining process.

¶16   We make much of the fact that Hararah waived his preliminary hearing in the same hearing in which he expressed his rejection of the State's "best" plea offer. This shows that Hararah's waiver was not based on the possibility of future bargaining or a fear that he would not be able to accept a plea deal if he had a preliminary hearing. Counsel did not indicate that Hararah anticipated any plea bargain better than the one the State had offered—as the plea bargain offered was already the "best offer" possible; instead, Counsel represented that Hararah had considered the offer and had decided to proceed to trial rather than accept the offered bargain. And Counsel did not mention the idea that the preliminary hearing was being waived to keep open the prospect of a future plea deal.

¶17   Hararah fails to provide us with any evidence supporting a belief that his independent desire to proceed to trial—after rejecting the State's "best offer"—was not what drove his decision to waive his right to a preliminary hearing. If Hararah had represented in any way that he was forgoing the preliminary hearing *because* he was planning to accept a plea deal or wanted to keep his options open, the case before us would be quite different. But instead, the record demonstrates that Hararah was forgoing the preliminary hearing after having fully considered and rejected the State's best offer and with the goal of going to trial as soon as possible. Accordingly, Hararah has not shown that any error took place, because there is no indication that the district court's comment had any effect on Hararah's actions.

¶18   Similarly, the district court's post-waiver statement that "seeing as we did not go to prelim, we could still have discussions regarding, you know, some other outcome to the . . . litigation" had no bearing on Hararah's decision to waive his right to a preliminary hearing. At that point, Hararah had already made his decision to forgo the preliminary hearing, and he had also already rejected the State's best plea offer.

¶19 Furthermore, even if we assume that the district court's comments alone—rather than Hararah's counterfactual claimed reliance on them—constituted error, Hararah has not met his burden on plain error review to show prejudice. The record shows that Hararah would have taken the same course of action whether or not the district court made the comments at issue. The same facts discussed above indicate that even if the statements had never been uttered, Hararah would have been presented with and rejected the State's "best offer" and would have wanted to move as quickly as possible toward trial, including waiving his preliminary hearing. Accordingly, Hararah's claim on this point fails.[4]

¶20 Moreover, even if "an error exist[ed]" that "should have been obvious to the [district] court," *Holgate*, 2000 UT 74, ¶ 13 (cleaned up), any such error was cured by Hararah's conviction

---

4. This reality sinks another of Hararah's arguments. Hararah asserts that we "should hold that unpreserved, palpably erroneous, uninvited state [c]onstitutional violations caused by district courts that have abandoned their neutral role should be subjected to the heightened beyond-a-reasonable-doubt standard." "For certain federal constitutional errors[,] we evaluate prejudice for whether the error was harmless beyond a reasonable doubt." *State v. Duran*, 2011 UT App 254, ¶ 13, 262 P.3d 468 (cleaned up). While Hararah "acknowledges that whether the [heightened] standard applies to *state* constitutional claims is unresolved in Utah" (emphasis in original), he invites us to apply it here. We find no occasion to address this issue because we have concluded that there was no error. But, even if there was constitutional error and even if we applied the heightened standard, we would have no trouble concluding that "the error was harmless beyond a reasonable doubt," *see id.* (cleaned up), because Hararah's plans were not impacted in any way by the district court's statements and no other outcome would have been reached if the district court had not made the statements.

by a jury, *see State v. Aleh*, 2015 UT App 195, ¶¶ 13–18, 357 P.3d 12, *cert. denied*, 366 P.3d 1213 (Utah 2016). In *Aleh*, a defendant "contend[ed] that the trial court erred in denying his motion to withdraw the waiver of his right to a preliminary hearing." *Id.* ¶ 13. This court determined that because the "sole purpose" of a preliminary hearing is "determining whether probable cause exists," "an error at the preliminary stage is cured if the defendant is later convicted beyond a reasonable doubt." *Id.* ¶¶ 14–15 (cleaned up). And "[t]his is so even when the error consists of a complete deprivation of a preliminary hearing." *Id.* ¶ 16.[5] "Because conviction beyond a reasonable doubt cures any flaw in a preliminary hearing—including the complete deprivation of a

---

5. Hararah asserts that "the *Aleh* decision incorrectly held" that *State v. Jensen*, 136 P.2d 949 (Utah 1943), was overruled. In *State v. Aleh*, 2015 UT App 195, 357 P.3d 12, this court stated, "To the extent that *Jensen* stands for the proposition that a conviction does not cure any error in the preliminary hearing, including the complete deprivation of a preliminary hearing, we conclude that the more recent precedent on which we rely implicitly overruled *Jensen* on this point." *Id.* ¶ 18 n.2. Hararah argues that this ruling "misreads all four of the Utah Supreme Court decisions upon which it relies." But because *Aleh* states that a "conviction beyond a reasonable doubt cures any flaw in a preliminary hearing—including the complete deprivation of a preliminary hearing," *id.* ¶ 18, adopting Hararah's view to the contrary would require us to overturn *Aleh*. Hararah has not asked us to do so, and we are bound by the *Aleh* court's interpretation of *Jensen* and subsequent cases. *See Doyle v. Lehi City*, 2012 UT App 342, ¶ 27, 291 P.3d 853 ("We are bound by the United States Supreme Court, the Utah Supreme Court, and our own precedent under stare decisis principles."). Hararah further claims that the present case is distinguishable such that the holding of *Aleh* does not apply. We disagree. The broad and unequivocal language of *Aleh* applies here, and Hararah's conviction by a jury cured any error involved in the waiver of his preliminary hearing.

preliminary hearing—it necessarily cures any error the [district] court may have made in accepting a defendant's waiver of the right to a preliminary hearing." *Id.* ¶ 18.[6] "Accordingly, [Hararah's] conviction of all charges beyond a reasonable doubt cured any possible error attending his waiver of a preliminary hearing." *See id.*

¶21   Ultimately, Hararah's argument of plain error fails.

B.      Exceptional Circumstances Doctrine

¶22   We apply the exceptional circumstances doctrine "to reach an unpreserved issue where a rare procedural anomaly has either prevented an appellant from preserving an issue or excuses a failure to do so." *State v. Johnson*, 2017 UT 76, ¶ 29, 416 P.3d 443 (cleaned up). Hararah argues that "[b]ecause it is procedurally uncommon in Utah to have a district court force a criminal defendant to waive his constitutional right to a preliminary hearing, a rare procedural anomaly occurred."

¶23   But the claimed procedural anomaly did not actually occur. Hararah's argument points to the presumed *effect* of the district court's statements (namely, "forc[ing]" Hararah "to waive his constitutional right to a preliminary hearing") rather than the

---

6. We are mindful that applying *Aleh* limits our ability to conduct a meaningful review of a circumstance where a court adopts a practice of conditioning the permissibility of plea negotiations on the waiver of a preliminary hearing. A defendant who relied on such a restriction would either be acquitted, and would thus not file an appeal, or be convicted, and *Aleh* would operate to cure the error. *See Aleh*, 2015 UT App 195, ¶ 18. Therefore, the issue may evade appellate review. Accordingly, we recognize that a petition for interlocutory appeal may be the appropriate vehicle for seeking review of such a practice, and we invite defendants who wish to challenge any such practice to avail themselves of this avenue for appellate review.

mere occurrence of the statements as the "rare procedural anomaly." But as we have explained, Hararah was not forced into waiving his right to a preliminary hearing, because he chose to waive that right for reasons independent from the district court's comments. The absence of an actual "rare procedural anomaly" alone defeats Hararah's argument as to the applicability of the exceptional circumstances doctrine, but this is not all.

¶24   Even if we assume that the district court's statements constituted a "rare procedural anomaly," Hararah would need to show that they "either prevented [him] from preserving an issue or excuse[d] a failure to do so." *See id.* Hararah does not attempt to explain what prevented him from objecting to the district court's statements and thereby preserving the issue. In reality, there was nothing preventing him from doing so. Hararah could have objected when the district court made the first statement at the July 2020 hearing. But this is not a case where a defendant had only one opportunity to object to an alleged error. Hararah could have taken time to review the issue and objected during the August 2020 hearing. Or he could have objected after the district court's follow-up comment at the September 2020 hearing. Furthermore, before trial, Hararah could have filed a motion to withdraw his waiver. On this record, Hararah had time and multiple opportunities to object or preserve this issue, and he did not do so.

¶25   Moreover, we are not convinced that Hararah's failure to preserve the issue is excusable. While we recognize the fundamental nature of the preliminary hearing and we protect defendants' constitutional rights to preliminary hearings, we also recognize that a defendant has the constitutionally guaranteed right to waive the preliminary hearing. *See* Utah Const. art. I, § 13 (protecting the right to a preliminary hearing "unless the examination be waived by the accused with the consent of the State"); *see also, e.g., Hafen v. State*, 2011 UT App 85, ¶¶ 3–4, 249 P.3d 1006 (per curiam) ("[The defendant] filed his petition

asserting that he was deprived of his preliminary hearing. . . . The petition was inconsistent with and [superseded] by [the defendant's] waiver. [The defendant] was not deprived of any right to a preliminary hearing." (cleaned up)). Waiving a preliminary hearing may have negative implications, but this reality does not invalidate a qualifying waiver. *See State v. Bragg*, 2013 UT App 282, ¶ 40, 317 P.3d 452 ("[The defendant] waived his right to a preliminary hearing, [forgoing] one opportunity to explore the exact nature of the charges against him and resolve any confusion about what those charges entailed."). While Hararah may, in retrospect, have benefitted from taking the opportunity to develop the victim's testimony at the preliminary hearing, this does not invalidate his waiver. And his regrets do not excuse his failure to preserve this issue. Therefore, the exceptional circumstances doctrine does not apply.

## II. Ineffective Assistance

¶26    Hararah also asserts that Counsel provided ineffective assistance by failing to object to the district court's comments discussed above and by informing the jury in opening statements that it would not hear that Hararah had punched the victim.

¶27    "To prevail on a claim of ineffective assistance of counsel, [a defendant] must demonstrate that (1) [the defendant's] counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense." *State v. Streeper*, 2022 UT App 147, ¶ 34, 523 P.3d 710 (cleaned up), *cert. denied*, 527 P.3d 1106 (Utah 2023); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of this test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

¶28    The second prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [a defendant's] claims under either prong." *Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182.

¶29    We can easily dismiss Hararah's first assertion of ineffective assistance. As discussed above, Hararah did not provide any evidence that he intended to accept a plea deal and that he based his waiver of the right to a preliminary hearing on such a plan.[7] Counsel was aware of Hararah's feelings toward the choice between pleading or going to trial and stated repeatedly that Hararah was not interested in pleading guilty or accepting a plea bargain. Accordingly, Hararah has not persuaded us that any comments from the district court related to plea negotiations would have affected his plans at all, so Counsel acted reasonably in choosing not to object to such comments. In other words, the district court's comments bore no impact on Hararah's actions, so there was no tactical reason for Counsel to act as Hararah retroactively desires. "In evaluating trial counsel's performance,

---

7. Under the Utah Rules of Appellate Procedure, "[a] party to an appeal in a criminal case may move the court to remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel." Utah R. App. P. 23B(a). Hararah has not filed such a motion seeking to supplement the record with any additional evidence of why he waived his preliminary hearing. Therefore, we look only to the evidence contained in the record, which does not present an alternative reason for Hararah's waiver apart from his desire to quickly proceed to trial.

we give trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." *State v. Liti*, 2015 UT App 186, ¶ 18, 355 P.3d 1078 (cleaned up). Here Counsel acted in line with Hararah's clear desire to proceed toward trial.

¶30 Additionally, for the same reasons described above, we are convinced that Hararah was not prejudiced by this alleged deficiency in performance. Hararah asserts that "[t]here is a reasonable likelihood that if [he] had been allowed to exercise his right to a preliminary hearing," his case would have ended differently. But Hararah *was* able to exercise his right to a preliminary hearing. We have already explained why the district court's alleged carrot—permitting Hararah the possibility of accepting a plea deal—was no carrot at all based on his express refusal of the State's "best offer" and his desire to proceed to trial. Hararah's claim might have some foundation if he had proceeded with a preliminary hearing and the court had, in fact, restricted his ability to negotiate a plea deal or even if he had accepted a plea bargain after waiving the preliminary hearing. But given that he clearly and consistently conveyed his desire to go to trial, that he was offered the "best" plea deal and refused it, and that his conviction by a jury at trial was in no way influenced by the district court's earlier comments on waiving the preliminary hearing, we are not persuaded that the outcome would have been any different if Counsel had objected. *See Strickland*, 466 U.S. at 695. Therefore, Hararah cannot show ineffective assistance on this point.

¶31 Hararah's second allegation of ineffective assistance is also unavailing. Hararah asserts that Counsel performed deficiently by saying in opening statements that the jury would "not hear any testimony about [Hararah] punching [the alleged victim]," when the victim went on to testify that Hararah had, in fact, hit her through a pillow. Hararah argues that Counsel should not have made such a promise without first "lock[ing] in" the victim's

testimony during a preliminary hearing. But, as discussed above, Hararah waived the preliminary hearing of his own free will. And it is clear that neither side was aware the victim would testify that Hararah hit her, because the deputy testified that he did not know of any assault other than Hararah throwing the plant. Accordingly, we do not fault Counsel for making a statement in line with all the known facts, and we conclude that Counsel's actions are not nearly "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

¶32 Furthermore, Hararah was not prejudiced by this allegedly deficient performance. Counsel was able to paint the victim as an unreliable witness based on the inconsistencies between her previous accounts of what happened and her trial testimony. And Counsel elicited testimony from the State's own witness that there were no allegations of punching prior to trial. Accordingly, Hararah was in a strong position to counter the State's case, and the jury still found him guilty of assault. From this, we see no support for "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

## CONCLUSION

¶33 Hararah's claim that the district court coerced him into waiving his preliminary hearing is not supported by the record, so the exceptional circumstances doctrine does not apply and the court also did not plainly err. Additionally, Hararah's assertion of ineffective assistance of counsel fails. Therefore, we affirm Hararah's conviction.

_____